STEPHEN GIBBS, Administrator, *vs.* GEORGE P. SWIFT,
Executor.

A deed of two hundred and eleven undivided acres of a tract of eighteen hun-
dred and seventy-eight acres owned by the grantor, " in quality and privileges
equally in every respect with the remainder," makes the grantee a tenant in
common with the grantor, in the proportion of two hundred and eleven to
eighteen hundred and seventy-eight.

A deed so defectively acknowledged as not to be entitled to registry, may yet
convey the legal title as against the grantor and his heirs.

A. sold H. two hundred and eleven undivided acres of land out of a tract of
eighteen hundred and seventy-eight acres, by a deed so defectively acknowl-
edged as never to have been recorded. A. then sold portions of said tract to
other persons, as sole owner, making no allusion to H.'s deed. It did not
appear but that two hundred and eleven acres remained unsold, and those por-
tions sold had not all been paid for. *Held,* that H. could not maintain an
action against A. for any part of the proceeds as money had and received to
his use.

SHAW, C. J.   This action is brought by Stephen Gibbs, as
administrator of the estate of Hallett Swift, against George
P. Swift, as the executor of Asa Swift.   The action is as-
sumpsit on the money counts, the plaintiff specifying in his
bill of particulars, a claim that Asa Swift, the defendant's tes-
tator, in his lifetime, received from the sale of lands, belong-
ing to the plaintiff's intestate, the sum of $1,000, and that
there is now due from the estate of Asa Swift to the estate
of Hallett Swift, including interest, the sum of $1,500.

The case was opened, and evidence offered by the plaintiff;
no evidence was given by the defendant, when the court ruled
that the action of assumpsit was properly brought.   Where-
upon, it was agreed to bring the case before the whole court,
upon an agreement that if this court should be of opinion,
that upon the evidence to be reported, the plaintiff was en-
titled to recover, an assessor should be appointed to report
the damages ; otherwise, the plaintiff was to become nonsuit.

The 'questions presented by the report have been fully and
ably argued in writing.   The action is brought to recover
money alleged to have been received by Asa Swift, in his
lifetime, as a share of the proceeds of sales of lands, in which
it is alleged that Hallett Swift had an interest, and that the

lands were sold and the proceeds received under such circum-
stances, that Asa Swift, in his lifetime, and his representative
now, is by law liable to account, as for money received to the
use of Hallett Swift.

The facts, as they appear to us to be disclosed by the evi-
dence, are substantially as follows : That in 1816, Asa Swift,
then Asa Swift, Jr., was the owner of a tract of land in Tioga
county, state of New York, deeded to him at a previous
time, as a tract containing eighteen hundred and seventy-eight
acres ; that by his deed dated the 25th of November, 1816, he
conveyed to Hallett Swift two hundred and eleven undivided
acres of said land, in quality and privileges equally in every
respect with the remainder. This deed purported to be given
on a pecuniary consideration, estimating the land sold at two
dollars an acre, with usual covenants of seizin and warranty;
to be executed by Swift and wife, in Massachusetts; to be at-
tested by John Hawes, and acknowledged before John Hawes,
a justice of the peace for the county of Bristol. It is stated,
that this deed was not so acknowledged as to entitle the
holder, by the laws of New York, to have it recorded in the
registry of deeds for the county; which, we understand, to be
true ; and in point of fact, it never was so recorded. Asa
Swift died January 15, 1847. Hallett Swift died about ten
years before.

The other evidence may be briefly stated. George Swift,
brother of Mrs. Hallett Swift, widow of the plaintiff's intes-
tate, says that in 1846, "he had a conversation with Asa at
Wareham ; went at the request of his sister, under a power
of attorney from her; had some conversation with Asa about
the sale of this land ; Asa told her, in my presence, that he had
come down to have a settlement with her ; that he wished to
buy this land of her ; he offered her three dollars an acre. I
asked him how much of the land was sold, and how much he
had received from the sales; his answer was, he had sold
about enough to pay the taxes, and that was the only an-
swer I could get from him in relation to what he had re-
ceived. He said he was willing to sell his part for three
dollars an acre. I was not satisfied with his answer, and

went to see the land. He said the sales were made by Woodbridge." The witness saw him several times afterwards, and asked him for his account of sales. "He promised to send it, but never did. Said he would write to his agent, Mr. Woodbridge, and let witness know when he got it. Saw him when he was confined to his house by illness; asked him for his account, but he would not show it. Said the sales had been made by Mr. Woodbridge, by his authority. Asa offered me to turn out to my sister the quantity of land she claimed. I told him he had sold the best of it, and therefore declined."

Woodbridge's testimony was also taken. He testified that he was employed by Asa Swift to sell the land. "First employed in 1817. Was authorized by written authority, [produced one letter; objected to, because a copy, and not the original; not material.] Said lands were surveyed in lots, numbered, were mostly hilly, and covered with forest. They were sold on credit; proceeds went to Swift from time to time, and no regular book-account kept." States the mode in which sales were made. "Deeds were made by Swift after the lands were paid for. Cash was received by the witness and paid over to Swift. Swift never rendered me any account; at his request I sent him an account in 1846. He claimed to own the land, and once showed witness a deed. No recollection that he ever made any statement in relation to any interest of Hallett Swift as the owner. Some lots sold have not been paid for. Part of the proceeds of sales were sent to Swift, a part remains in my hands, and the remainder is due from the purchasers. Some lots remain unsold, containing two hundred and ninety-nine and a half acres. They are hilly, not easy of access, no pine timber on them, and worth two or three dollars an acre. The account is still unsettled. Since Asa Swift's death, have made but one remittance, — one of three hundred dollars."

1. Upon consideration of this evidence and of the facts which it tends to prove, the court are of opinion, that whatever other remedy the plaintiff's intestate, or the plaintiff himself ever had, or has now, this action for money had and

received, cannot be maintained. Even if the parties, the defendant's testator, and Asa Swift, had agreed that the latter should act as bailiff and agent for the sale of the land held in common, for their mutual account, an action for money had and received would not lie, before the settlement of an account, and a balance struck. The plaintiff's remedy must have been by bill in equity, or by a special action of assumpsit, setting forth the agreement and promise to account, and a refusal upon proper demand to render such an account. But independently of that consideration, we cannot perceive that the money received by the defendant's testator, for portions of the estate sold in his own name, and as it appears in the evidence on his own account was, in any just or legal sense, the money of the plaintiff's intestate.

The deed given by Asa to Hallett, in 1816, of a part of a tract of land lying in the state of New York, was somewhat peculiar, or as called in the argument, " unique," but was a good and valid deed, to pass the property as between vendor and vendee. In this commonwealth, it would be a good warranty deed to all intents and purposes, because it was so acknowledged before a justice of the peace, as to entitle the holder to have it recorded, and thus make a perfect title in all respects. But because it was not acknowledged according to the laws of the state of New York, in the manner required by the laws of that state, it could not be recorded there, so as to render it valid as against all creditors and subsequent purchasers; and as title to real estate must be made according to the law of the state where the land lies, it would not be available against other purchasers and creditors.

2. But if the deed was not effectual and valid to all purposes, it was not the fault of the grantor, that it was not made valid by a subsequent acknowledgment. Probably as it was made in Massachusetts, and valid according to the law of Massachusetts, and would have been valid here, the grantor supposed it sufficient. If the grantee, on offering it for registration, had found that it could not be received for want of a sufficient acknowledgment, it was

manifestly the duty of the grantee to notify this fact to the grantor, and request an acknowledgment conformably to the laws of the state of New York, before a judge competent by those laws to take it; and if he had refused to do so, the grantee might have made proof of the execution of the deed, either in this state or in the state of New York, which would have been sufficient to admit the deed to be entered on the registry. The grantee has no right to say that he had no power to compel a proper acknowledgment of his deed from the grantor, without having given him notice of what acknowledgment was required, and a request to him to make it; nor can he say that he had no means of proving the execution of the deed, until he had requested the attesting witness to attend before a judge, duly authorized to take such proof, either in this state or in New York, for that purpose. There is no proof that any such notice was given or request made, either to the grantor or the attesting witness; and, therefore, if the deed failed of being completed and recorded, it was attributable to the laches of the grantee. At all events, the grantor is not responsible for the fact that the deed was not recorded; nor can his rights or responsibilities be enlarged or changed by the existence of that fact.

No other objection is made to the validity of this deed and its sufficiency to pass the estate which it purports to convey. If the plaintiff should contend that the grantor had no sufficient title, his remedy would be on the covenants; if he was induced to take the deed and pay his money, by any misrepresentation or other fraud, he might avoid the deed and recover back the purchase-money, as money paid upon a consideration which had failed. That remedy, of course, is barred by the statute of limitations. Indeed, the plaintiff does not contend that the deed was void and passed nothing; on the contrary, he claims that the estate did pass, and became his intestate's, and he claims the money as the proceeds of his share of the estate, which did pass by this deed.

3. We are then brought to consider the terms of this deed, what was the nature and character of the estate given by it, and the rights and obligations of the parties under it. It cer-

tainly was not a joint estate ; it had none of the character-istics of a joint estate. The grantor had formerly owned the whole, and let in the grantee to a part, which is described. It was no share or aliquot part in severalty, for it was not located on any part of the tract. It was, in terms, a given number of undivided acres, two hundred and eleven out of a tract described as containing eighteen hundred and seventy-eight acres, in quality and privileges equally in every respect with the remainder. Whether such grant gave the grantee an election to take his grant in any part of the tract, it is not necessary to decide, for he made no such election. But it gave him a share as tenant in common, of the whole tract, in the proportion which two hundred and eleven bears to eighteen hundred and seventy-eight. The grantor and grantee then were tenants in common of the whole parcel, and, of course, of each and every acre of it. As such, their right was to hold as tenants in common, to make partition, by mutual consent, or if both would not consent, either might have partition by process of law. Holding as tenants in common, they might, by mutual agreement, make sales of parcels to third parties to hold in fee, either by joining in a deed, by making one an agent for both by a proper power to convey real estate, or by appointing a common agent, under a like power. In either of these cases, the proceeds of the sales would enure to the tenants in common, in the proportion in which they owned the estate. But no such partition was ever made, and no such mutual agreement to make sales was ever entered into. What, then, was the effect of the sales made by Asa Swift, a tenant in common, holding by far the largest share of the common estate. As tenant in common, he could not alien any part of the estate in fee by metes and bounds; because such alienation would prejudice his co-tenant, in his right to have partition. *Bartlet* v. *Harlow*, 12 Mass. 348.

Such an alienation, however, would not be void, it would be good against the grantor and his heirs, by way of estoppel, and, of course, against all persons, except the co-tenant and his heirs. If they consent to take their shares out of other parts of the common estate, or are otherwise satisfied, or, if

they are not in a condition to take the exception, then the pur-
chaser, taking from such tenant in common, by metes and
bounds, will take a title which cannot be disputed. This
latter was the condition of Hallett Swift, when his co-tenant,
Asa Swift, gave deeds to purchasers of lots, to hold in sever-
alty by metes and bounds. On the record, Asa held the whole
estate. He had made a deed to Hallett, which made him,
Hallett, a co-tenant. But that deed was not recorded so as
to operate as constructive notice to purchasers. Hallett,
therefore, could not contest the validity of the conveyances
made by Asa, and, therefore, these purchasers took a good
title. But notwithstanding such conveyances to strangers,
which Hallett was estopped from controverting, his own right
remained, as against his co-tenant, to have the whole of his
property set off, in the residue of the common estate, remain-
ing after one or more such alienation, so long as enough
remained for that purpose. It follows, therefore, that Asa, in
making such conveyances, transferred no part of the estate
or right of Hallett Swift, his co-tenant. He sold it as his
own estate, and *primâ facie*, the proceeds were his own, and
in no part those of his co-tenant, and there is no proof to
qualify or control this conclusion. No part of such proceeds,
therefore, was received in right of the plaintiff's intestate, or
on the sale of his estate, and was not, therefore, received to
his use.

There is another result to be drawn from this view, which
is this. It appears that at the time of the death of Asa Swift,
a portion of the common estate remained, and for aught that
appears, remains still; and if the heirs of Hallett Swift can still
perfect their deed, by proof of execution, or if, as between the
parties, it is good without being acknowledged and recorded,
perhaps the heirs of Hallett may yet have partition against
the heirs of Asa. But if such deed cannot be perfected, or
availed of as between the parties, without acknowledgment
and record, this result is the consequence of the laches of their
ancestor, and cannot, in any respect, give a right against the
personal representative of Asa, for money had and received.

We have not overlooked the admissions of Asa Swift, made

shortly before his death, as testified to by George Gibbs. Asa said to the widow of Hallett, that he had come to settle with her; that he offered to pay her three dollars an acre for her share, or take the same for his; that he offered her terms of compromise. He certainly had a settlement to make with her, that is, with her husband's representatives or heirs. But his declarations and offers were all consistent with the hypothesis, that he had given Hallett a deed, which made him a tenant in common with himself, but that it was not recorded; that he had a legal authority, therefore, to give deeds to third parties, which would carry a valid title, as against Asa and his heirs, and that he had done this in regard to many, perhaps most of the lots. He would, therefore, naturally have a strong desire to settle the matter in a way consistently with his own rights and with those of his grantee and co-tenant. But it had no tendency to show that the lots which had been sold, had been so sold on joint account. The promise of Asa Swift from time to time, to render an account of the lands sold, and the prices at which it was sold, cannot be construed into an admission that he was liable to pay anything on such account. It seems rather to have been in consequence of a suggestion of George Gibbs, when Asa said he was willing to do what was right, and to give or take three dollars an acre; "that he (Asa) knew all about this land, and that his sister knew nothing." George Gibbs was not satisfied, and, therefore, went to examine the land for himself. The promise to give such an account, may well have been intended to give such information.

Had the defendant's testator sold the whole estate, it would have presented a stronger claim in equity; but even in that case, we are inclined to the opinion, that the remedy of the grantee and his heirs would have been upon the grantor's covenant of warranty. That covenant run with the land, and looked to the future, and, perhaps, might have been considered as broken, if the grantor had availed himself of the peculiar position in which he was placed, by the failure of the grantee to record his deed, to alienate the whole of the estate, which he had granted and warranted. But as already stated,

he had not alienated the whole estate, but left a part, perhaps enough to satisfy his grant. But were it otherwise, it could not affect this claim against the personal representative, to recover money, as the proceeds of the sales of the intestate's land.

Several other points were discussed in the argument, which we do not consider it necessary further to consider. In regard to the statute of limitations, to avoid misconstruction, we think it proper to say, that if the defendant's intestate had been liable, as for money received for Hallett and to be accounted for, we think it could not be extended so as to include money received more than six years before the death of Asa Swift. It would not have been within the exception of mutual accounts, where one item, within six years, draws the residue of the account with it. The account was wholly on one side. The receiver could never have been liable for anything more than the net proceeds, composed of balances of the money received, after deducting charges for taxes, commissions, and incidental expenses. Such charges would be deductions out of the money in the receiver's hands, and not debts for which the person entitled to the proceeds would have been personally liable. It was not, therefore, a mutual account within the statute.

According to the agreement of the parties, the judgment to be entered is, *Plaintiff nonsuit.*

*L. F. Brigham,* for the plaintiff.

*R. C. Pitman,* for the defendant.