THOMAS SQUIRES, *et al.*, v. WM. H. CLARK, *et al.*

1. RIGHTS AND REMEDIES *of Owner of Undivided Interest in Lands.* Whether a party having the legal title to an undivided portion of a tract of land, but actually disseised by the party holding the title to the remaining interest, must recover possession before he can proceed under the statute of 1868 for partition, is a question suggested but not decided.

2. POSSESSION *of Tenants-in-Common.* Mere possession of a tenant-in-common, no matter how full and complete, does not of itself prove an ouster of his co-tenant. There must be something to show a denial or repudiation of his co-tenant's rights, or the possession will be deemed to be held in subordination thereto.

3. ———— The term "exclusive possession," may imply a repudiation of a co-tenant's rights, and therefore indicate an ouster, or it may be used to denote a full and complete and actual possession irrespective of the title under which it is held.

4. ———— *Recognition of Rights of Co-Tenant.* Purchase of a co-tenant's rights and interest, and receiving a conveyance thereof, is evidence of a recognition rather than a repudiation of that title and interest.

5. ———— The findings in this case do not show an ouster by the defendant of his co-tenant, the plaintiff, and therefore the decree of partition is affirmed.

*Error from Franklin District Court.*

ACTION for partition, brought by *Wm. H. Clark*, as plaintiff, against *Thomas Squires, Geo. S. Newman,* and *W. M. Pickering,* as defendants. Subsequently, *Ira Davenport* was made a party defendant, as having an interest in the premises, as mortgagee of *Squires.* The lands in controversy, and the respective interests of the parties plaintiff and defendant, are shown in the findings quoted in the opinion, *infra.* Trial at the November Term 1874, and partition adjudged and decreed in accordance with the findings above mentioned. *Squires* and *Davenport* appeal, and bring the case here on error.

*John W. Deford,* for plaintiffs in error.

*W. H. Clark,* for defendants in error.

The opinion of the court was delivered by

BREWER, J.: This was an action of partition, tried by the court without a jury. The testimony was not preserved, and the case stands before us upon the pleadings, findings, and judgment. The findings are as follows:

"1st. Wab-che-qua, an Ottawa Indian woman, was owner in fee of the E. ½ of the N.W. ¼ of section 32, township 16, range 19, being 80 acres of land in Franklin county. She died in the year 1864, leaving her husband, Pem-ach-wung, her sole surviving heir-at-law.

"2d. Kah-ptah-yah-sung, an Ottawa Indian boy, was the owner in fee of the E. ½ of the S.E. ¼ of section 31, township 16, range 19, being 80 acres of land in Franklin county. He died in the year 1864, at the age of 12 years, unmarried and without issue, leaving his father, Pem-ach-wung, his sole surviving heir-at-law.

"3d. Pem-ach-wung, an Ottawa Indian man, was the owner in fee of the two tracts above described, and of the W. ½ of the S.W. ¼ of section 32, township 16, range 19, being 240 acres of land in Franklin county. He died in the year 1864, leaving his children, Masko, Shah-ne-gush-go-qua, M-tah-yah, Zah-wis, Non-deo and Non-qui-ge-zhick, his sole surviving heirs-at-law.

"4th. Non-qui-ge-zhick, an Ottawa Indian boy, died in the year 1865, at the age of 4 years, unmarried and without issue; and Non-deo, an Ottawa Indian girl, died in the year 1866, at the age of 8 years, unmarried and without issue; and so the lands herein described descended to the four surviving children of Pem-ach-wung, vesting in each an undivided one-fourth interest in each parcel thereof.

"5th. On the 6th of September 1867, Masko, an Ottawa Indian boy, then 19 years of age, executed and delivered to Thomas Squires a conveyance for the lands herein described, and on the 7th of May 1872, Shah-ne-gush-go-qua, an Ottawa Indian girl, then 17 years of age, executed and delivered to A. J. Glover and others a conveyance for the lands herein described; and on the 29th of July 1872, A. J. Glover and others executed and delivered to Thomas Squires a deed for the lands herein described.

"6th. On the 18th of June 1873, M-tah-yah, an Ottawa Indian girl, then 17 years old, executed and delivered to C. P. Stevens and K. C. Glover a conveyance for the lands

herein described; and on the 20th of June 1873, C. P. Stevens and K. C. Glover executed and delivered to G. S. Newman and W. M. Pickering a conveyance for the lands herein described.

"7th. On the 24th of May 1873, Zah-wis, an Ottawa Indian girl, then 16 years of age, executed and delivered to Wm. H. Clark a conveyance for the lands herein described.

"8th. Thomas Squires was, at and before the commencement of this action, and has been ever since the year 1867, in exclusive possession of the lands herein described, and has improved and cultivated the same, and has lived on and cultivated a part thereof as a homestead.

"The court therefore finds, that Thomas Squires is the owner of an undivided one-half interest in the lands herein described; that Wm. H. Clark is the owner of an undivided one-fourth interest in the lands herein described; that G. S. Newman is the owner of an undivided one-eighth interest in the lands herein described; and that W. M. Pickering is the owner of an undivided one-eighth interest in the lands herein described."

And upon these findings a decree in partition was entered. So far as the interests of the respective parties are shown by the findings, they warrant a partition; but it is claimed that the findings, taken in connection with the pleadings, show such an exclusive possession in Squires as amounts to an ouster of his co-tenants, and that therefore their title must be established by proceedings in the nature of ejectment before any partition can be decreed. How far the old rule of the equity courts concerning partition obtains in this state, and whether a party having the legal title but actually disseised must first by an action-at-law recover possession before proceeding to obtain partition, are questions we do not deem necessary for decision, although presented by counsel for plaintiff in error. The question is discussed at some length in the following cases cited by him: *Deery v. McClintock,* 31 Wis. 195; *Lambert v. Blumenthal,* 26 Mo. 473; *Florence v. Hopkins,* 46 N. Y. 182; *Penrod v. Damer,* 19 Ohio, 218; *Tabler v. Wiseman,* 2 Ohio St. 211. In 1868 a change was made in the statute concerning partition. Prior to that time the statute seemed to define between whom partition might

be made. It read, "that all joint-tenants, tenants-in-common, and coparceners of any estate in lands, tenements, and hereditaments within this state, may be compelled to make or suffer partition of such estate." Comp. Laws, 740, § 1. In the revision of 1868 this was left out, and in lieu thereof the statute simply reads, "When the object of the action is to effect a partition of real property, the petition must describe the property, and the respective interests of the owners thereof, if known." And an entire article of the code is devoted to the subject of partition, prescribing the proceedings necessary therein. Gen. Stat. 753, art. 26. But waiving this, and conceding that one actually disseised cannot maintain partition, we think the findings fail to show such disseisin. Exclusive possession of itself does not show a disseisin. The presumption is, that the possession is held in subordination of the rights of co-tenants, and for their benefit. There must be not only an exclusive but an adverse possession, something to show an ouster, actual or constructive. In *Wommack v. Whitmore*, 58 Mo. 448, it is said that "the disseisin or an adverse possession amounting to an actual ouster must be shown in order to prevent the right to an action for partition." In 2 Preston on Abstracts, quoted approvingly in *Owen v. Morton*, 24 Cal. 373, the author uses this language: "To disseise his companions, there must be such acts as are constructively equivalent to an ouster, as the denial of right to the rent, or any part, or the possession of any part of the land, or an exclusive possession for a long time so as to afford the presumption of a disseisin." In *Ricard v. Williams*, 7 Wheat. 121, the court holds that "An ouster or disseisen is not indeed to be presumed from the mere act of sole possession, but it may be proved by such possession accompanied with a notorious claim of an exclusive right." In *Warfield v. Lindell*, 30 Mo. 272, the court says, that "A possession of land by a tenant-in-common for twenty-six years, and an exclusive receipt by him of the rents and profits, without any account rendered, or any demand made, would not of themselves raise a legal presump-

tion of ouster by such tenant-in-common of his co-tenants." See also, *Coleman v. Clemants*, 23 Cal. 245; *Shaw v. Gregoire*, 41 Mo. 407. It may fairly be deduced from these authorities, and many others, that mere possession, no matter how full and complete, does not of itself prove an ouster. There must be something to show a repudiation of the co-tenant's right. The statute provides in actions for the recovery of real property, that when brought by tenants-in-common against co-tenants, in addition to the matters ordinarily required to be stated the petition must state that the "defendant either denied the plaintiff's right, or did some act amounting to such denial." Gen. Stat. 748, § 597. In other words, the plaintiff must show not merely that defendant is in full and entire possession, but also that he affirmatively repudiates the plaintiff's rights therein. The findings show that Squires was in "exclusive possession." Now the term "exclusive," is sometimes used, it is true, to mean not exactly that the actual possession is sole and complete, but also that it is claimed to be rightfully so, and is held with the intent to exclude the possession of all others; but it is also frequently used to indicate simply that the party holds a full and complete actual possession. The party alone occupies the premises. It is not a joint occupation, but a single and exclusive one. The word being then often used in and fairly susceptible of the two meanings, we should, *certeris paribus*, be compelled to hold that the court intended that meaning which supported and harmonized with the judgment, rather than that which overthrows it. But we need not rest on this, for it is clearly shown, that during this period in which the court finds the exclusive possession was maintained, Squires recognized in the plainest possible manner the rights of some of the co-tenants, that is, by purchasing their interests and taking a conveyance thereof to himself. See 5th finding. In other words, while in full possession, (in the language of the court, in "exclusive possession,") he shows that he does not consider himself the sole owner, and alone entitled to possession. He recognizes that his possession is subordinate

to the rights of others, and seeks by purchase to enlarge the extent of his rights thereto. Surely, the court does not mean to say that he was denying and repudiating rights which he was at the same time purchasing.

We think that it cannot be said that it affirmatively appears that the court erred in entering the decree of partition upon the findings, and therefore it must be affirmed. So far as the interests of the mortgagee are concerned, it does not appear that they have suffered prejudice.

All the Justices concurring.