WILLIAMSON VAN ORMER V. SUSAN HARLEY, Appellant.

Co-tenancy: DISSEISIN: *Adverse possession.* Possession under deeds from four of five tenants in common, purporting to convey the entire estate, is not such disseisin of the one who did not convey as will start the running of limitations, where grantors and grantees recognize that such co-tenant has an interest, and the grantee makes frequent efforts to buy that interest.

ABANDONMENT BY CO-TENANT. The rights of such co-tenant are not barred in equity by failure to take active steps for their enforcement, where he did not waive them and the person in possession knew of such rights and that they were not abandoned.

RENT FOR OCCUPANCY. A tenant in common is liable for rent if he lease the premises to a stranger, but is not liable to pay co-tenants who do not share the use of the premises, rent for his own occupancy unless he exclude the co-tenants from possession.

TAX SALE AND TAX DEED. A tax sale of lands at the instance of a tenant in common having possession of the premises, for the purpose of extinguishing the title of his co-tenant, is not, until the tax deed is made, such an ouster of the co-tenant as to make the tenant in possession liable to such co-tenant for rent.

SAME. Where the heirs of the co-tenant in possession take, after his death, a conveyance from the grantee in such tax deed, but assert no adverse claim against their ancestor's co-tenant by reason thereof, their possession is not such an ouster of such co-tenant as to render them liable to him for rent.

*Adverse possession.* A sale of land for delinquent taxes and the issuing of a tax deed therefor in pursuance of a plan of one co-tenant in common in possession, and for his interest, to extinguish the title of his co-tenant, do not create any adverse right against the latter.

IMPROVEMENTS: *Partition.* Though a tenant in common cannot, as a rule make his co-tenant liable for improvements not consented to by such co-tenant, where the improvements increase the value of the land, and the possession of the tenant making the improvements is not wrongful, equity may allow for such improvements, in partition.

*Rents and profits.* A tenant in common out of possession who makes no objection to the improvements on the land made by his co-tenant in possession will not be allowed to share in the higher rent made possible by such improvements without paying a share of their cost.

*Partition:* ADVANCEMENT. The mere fact that a conveyance of land from father to son was intended as an advancement does not prevent the latter from maintaining an action for the partition of other land left by the father on his death.

*Evidence.* That no consideration was paid for a conveyance of land from father to son, and that the latter did not participate in the distribution of certain land of the father after his death, is evidence that such conveyance was intended as an advancement.

Appeal: MUTILATION OF RECORD. Where appellant's counsel, without leave, removed certain exhibits from the transcript after it had been used by the court below, but the transcript as certified appears to contain all such exhibits, and no application was made below to correct the supposed deficiencies, a motion to strike out the evidence because of the alleged mutilation of the records will be denied.

*Appeal from Ida District Court.*—HON. Z. A. CHURCH, Judge.

FRIDAY, MAY 14, 1897.

ACTION in equity for the partition of real estate and for an accounting. There was hearing on the

merits, and a decree for the plaintiff.  The defendant appeals.—*Modified and Affirmed.*

*Warren & Johnston* for appellant.

*F. F. Kiner* and *C. W. Rollins* for appellee.

ROBINSON, J.—In the year 1863, Amos Van Ormer, a resident of the state of Pennsylvania, died intestate, seized in fee simple of a tract of one hundred and twenty acres of land in Ida county, in this state.  He had survived his wife, and his only heirs were his children, who were the plaintiff, and four daughters, named Hannah, Jane, Lucinda, and Mary.  In April of the year 1875, Jane, Lucinda, and Mary, then married, and their husbands, executed to Jacob Feghtly, a resident of the state of Illinois, a warranty deed, which purported to convey to him "the undivided three-fourths" of the land in question.  In the same and subsequent years, the heirs of Hannah, who had married and was then dead, executed to Feghtly deeds which purported to convey in the aggregate an undivided one-fourth of the land.  In the year 1882, Feghtly caused the land to be broken, and during the next year erected thereon a dwelling house, barn, granary, and other improvements, at a cost of about eight hundred dollars.  In 1887 he died, testate, having devised the land in question to his sister, Sarah Sigman, and to his niece, the defendant, in equal shares.  In the year 1884 the land was sold for delinquent taxes, and in June, 1889, a tax deed therefor was issued.  In September, 1890, Sarah Sigman executed to the defendant a conveyance which purported to convey an undivided one-half of the land; and in September, 1894, the defendant acquired the interest which had been conveyed by the tax deed. The plaintiff claims that he has never parted with his

interest in the land, and that he is the owner of an undivided one-fifth thereof. He asks that his share be set apart; that he have an accounting of the rents and profits of the land for the last twelve years; and for general equitable relief. The defendant denies the alleged ownership of the plaintiff, and his claim that he never parted with his interest in the land, and, by way of counter-claim, asks, in case he is found to be entitled to the shares he claims, that he be required to pay to her one-fifth of the amount expended by herself and her grantors for taxes and improvements. The defendant also avers that the alleged right of the plaintiff to rents and profits which accrued prior to the year 1888 is barred by the statute of limitations, and that his alleged right to an interest in the land is also barred, for the reason that she and the persons through whom she claims had been in continuous and actual possession of the land, under a claim of right and title to all of it adverse to the plaintiff, since the year 1881. The defendant also alleged that, prior to the death of Amos Van Ormer, the plaintiff, in consideration of the conveyance to him of the land in Pennsylvania, executed to his father a release of all right to or interest in real estate of which his father should die seized; that the interest of the plaintiff was extinguished by the tax deed; that the plaintiff knew of the conveyance to Feghtly, and that he took actual possession of the land in the year 1882; that for more than thirty years the plaintiff did not contribute anything to the payment of the taxes on the land, nor assert any interest therein, nor make any claim for rents prior to the commencement of this action; and that at all times he knew of and acquiesced in the conveyances and possession of the land. In reply, the plaintiff admits the issuing of the tax deed, and avers that it was obtained for the purpose of defrauding him, and

that it is void. The district court decreed the plaintiff to be the owner of the undivided one-fifth of the land, and that his share be partitioned and set off to him, and that he recover one-fifth of the rents and profits of the land for the period of ten years, including the year 1894, fixed at the sum of six hundred dollars, with interest thereon at the rate of six per cent. per annum, amounting to one hundred and ninety-eight dollars. The judgment for the amount stated was made a lien upon four-fifths of the land, as the share owned by the defendant. No allowance was made for taxes paid or improvements made.

I. The appellee has filed a motion to strike the evidence from the abstract, and to affirm the decree of the district court, on the ground that certain exhibits were removed from the transcript after it had been prepared. It appears that a transcript was made for the use of the district court, to which exhibits claimed to be valuable were attached, and that, after the district court had used the transcript, the exhibits were detached, and placed in a safe, to prevent loss. We are unable to determine from the evidence submitted to us whether the transcript had been made a part of the record when the exhibits were removed, but, if it had, the act of an attorney in removing them without authority from the court or adverse party would have been a most reprehensible mutilation of an official record. However that may have been, it is shown that the exhibits were inserted in their proper places in the transcript, after which it was duly certified, and, as submitted to us, it appears to be regular and sufficient. If it is not, steps to correct it should have been taken in the district court. The motion of the appellee must be overruled.

A motion of the appellant to strike an additional abstract filed by the appellee, in view of the disposition

we find it necessary to make of the case, is unimportant, and need not be considered.

II. The record contains much incompetent and immaterial evidence, to which objection was duly made, and which will not be given any weight in the consideration of the case. The competent and relevant evidence establishes facts substantially as follows: In the year 1862, Amos Van Ormer conveyed to the plaintiff eighty-five acres of land in Juniata county, in the state of Pennsylvania. When the father died, the next year, he still owned about four hundred acres of land in that county; and, soon after his death, proceedings were commenced in the orphans' court of Juniata county for a partition of the land. As a result of the proceedings, the land was divided and sold, and the proceeds were distributed among the heirs of the decedent, excepting the plaintiff. He knew of the proceedings, but did not participate in them, nor receive any part of the property distributed. The reason he gives for his non-participation is that some of his sisters thought he ought to be satisfied with what he had; that he was not well, and did not wish to quarrel with them, and therefore let them have the proceeds. There is some evidence to the effect that, when he received the conveyance for the eighty-five acres as stated, "he executed and delivered to his father a release of his share in any and all other real estate owned by his father;" but that is denied, and the testimony offered to prove the release is not satisfactory, and in some respects is improbable. Moreover, there is much in the record to contradict it. We are of the opinion that the sisters of the plaintiff demanded that the conveyance made to him be treated as an advancement equal to his share of the land in Juniata county, which his father owned at death, and that he acquiesced in their demands. He did not pay anything for the land, but he claims that he had

intended to move away from home, and that to induce him to remain, his father promised to give him the land for a home if he would erect a building upon it and otherwise improve it all of which he did. There is nothing in the record to show any judicial determination that the conveyance was an advancement. But the fact that no consideration was paid for the conveyance may be regarded a evidence that it was intended as an advancement, which is corroborated by the non-participation of the plaintiff in the distribution of the Juniata county land. If it be conceded that the conveyance should be treated as an advancement, it does not follow that the plaintiff should not recover in this action. The value of the estate left by Amos Van Ormer is not shown, nor does it appear whether advancements were made to any of the sisters. The value of the Juniata county land is not proven. If that conveyed to the plaintiff, and that which the decedent left to his heirs, were of the same value per acre, the plaintiff did not receive his share of the land in that county. It is not shown that he paid any taxes on the land in question, nor that he demanded any share of the rents derived from it prior to the commencement of this action; but it appears that he at all times claimed an interest in the land, and it is not shown that he ever released or conveyed that interest, and it is shown that the other members of the family regarded the land as belonging to all of the heirs.

III. The heirs of Amos Van Ormer became tenants in common of the land in question, and, when the conveyances described were made to Feghtly, he and the plaintiff became tenants in common. It is the general rule that the possession of a tenant in common is possession for his co-tenants, and that one cannot be disseised by another without an actual

ouster, or "a possession attended with such circumstances as to evince a claim of exclusive right and title, and a denial of the right of other tenants to participate in the profits." *Burns v. Byrne*, 45 Iowa, 287. It is said, however, that as the conveyances to Feghtly purported to convey all of the land to him, and as he took possession of the land under those conveyances, and improved it, and treated it as his own, there was such an ouster of the plaintiff that the statute of limitations then commence to run against him. Had Feghtly claimed title, and held possession adversely to the plaintiff, it is probable that the statute would have commenced to run as claimed. *Kinney v. Slattery*, 51 Iowa, 353. But the evidence shows that he did not deny the title of the plaintiff, but at all times recognized the fact that he had an interest in it, and made frequent efforts to buy that interest, and the only evidence that the heirs of Amos Van Ormer, other than the plaintiff, ever claimed adversely to him, is the fact that their deeds purported to convey to Feghtly all of the land. But the evidence given by the only sister of the plaintiff who testifies shows that his interest in the land was always recognized by the heirs. The statute will not commence to run until their is an actual adverse possession, with the intent to claim against the true owner. *Jones v. Hockmen*, 12 Iowa, 108; *McNamee v. Moreland*, 26 Iowa, 107; *Grube v. Wells*, 34 Iowa, 148; *Skinner v. Crawford*, 54 Iowa, 120 (6 N. W. Rep. 144); *McCarty v. Rochel*, 85 Iowa, 432 (52 N. W. Rep. 361); *Litchfield v. Sewell*, 97 Iowa, 247 (66 N. W. Rep. 104). See, also, 1 Am. & Eng. Enc. Law (2d Ed.), 796. The preponderance of the evidence shows that the statute of limitations did not commence to run during the lifetime of Feghtly, and that it had not run at the commencement of this action. It is said that the plaintiff has slept upon his rights, and should not now

be permitted to enforce them. The answer to that is that, while he did not take any active steps to enforce his rights, he did not waive them, and Feghtly and·his grantors at all times knew of them, and had no reason to think they had been abandoned.

IV. It is well settled that a tenant in common cannot acquire title adverse to a co-tenant by pur-chase at a tax sale, or by the purchase of an outstand-ing incumbrance, which is permitted to ripen into a title. *Sorenson v. Davis*, 83 Iowa, 409 (49 N. W. Rep. 1004); *Austin v. Barrett*, 44 Iowa, 490; *Leach v. Hall*, 95 Iowa, 611 (64 N. W. Rep. 793); *Moy v. Moy*, 89 Iowa, 512 (56 N. W. Rep. 668). The sale of the land in question for delinquent taxes, and the issuing of the tax deed therefor, were in pursuance of a plan of Feghtly, and for his interest, to extinguish the title of the plaintiff. But it did not create any right adverse to him, and the defendant does not in argument claim anything to the contrary.

V. The appellant contends that the court erred in not allowing her for improvements made on the land, and for taxes paid, and that the allowance for rent was excessive. It is the general rule that a ten-ant in common cannot make his ˙co-tenant liable for improvements made upon the land without the con-sent of the latter. 2 Jones, Real Prop., section 1898, *et seq.* But, where improvements have been made, they may be taken into considera-tion by a court of equity in making partition, that justice be done between the parties in interest. Id.; *Ford v. Knapp*, 102 N. Y. 135 (6 N. E. Rep. 283); *Car-ver v. Coffman*, 109 Ind. 547 (10 N. E. 567); Freeman, Co-ten., section 509. In this case, Feghtly, with knowl-edge of the interest of the plaintiff, made improve-ments of considerable value. That was done without any agreement or understanding with the plaintiff, and

without his consent, but it does not appear that he objected to what was done. The land was unimproved, unoccupied, and, so far as is shown, unproductive, before the improvements in question were made. They were of a character to increase the value of the land, and to make it desirable for renting purposes. Since they were made, its rental value has been about three hundred dollars per year. As the possession by Feghtly was not wrongful, and not against any known objection of the plaintiff, it would be inequitable to allow him to share in the rent which the improvements made possible, without requiring him to pay a share of their cost.

The general rule in regard to the liability of a tenant in common to a co-tenant for the rent of the property which is the subject of their co-tenancy, in the absence of any agreement, is that if one actually occupies the property, but his occupation is not adverse, and he does not exclude therefrom his co-tenant, he is not liable for rent, although his co-tenant does not share in the use of the premises. *Reynolds v. Wilmeth*, 45 Iowa, 693; *Varnum v. Leek*, 65 Iowa, 751 (23 N. W. Rep. 151); *Belknap v. Belknap*, 77 Iowa, 71 (41 N. W. Rep. 568); *Leach v. Hall*, 95 Iowa, 611 (64 N. W. Rep. 793); 2 Jones, Real Prop., section 1887, *et seq.* But when there is an ouster, and a tenant in common occupies and uses the property adversely to his co-tenant, or where he leases it to a third person, he is liable to his co-tenant for rent. *Sears v. Sellew*, 28 Iowa, 501; *Austin v. Barrett*, 44 Iowa, 488; *Dodge v. Davis*, 85 Iowa, 81 (52 N. W. Rep. 2); 2 Jones, Real Prop., section 1892.

We have seen that Feghtly did not hold the premises under a claim of right adverse to the plaintiff. It is true that he attempted an ouster by arranging to procure a tax title, but the tax deed was not and could not have been issued prior to his death, and

the tax sale cannot be given the effect of an ouster Feghtly did not occupy the land personally, but leased it to tenants, and therefore became liable for the payment of a share of the rental value of the land. It was stipulated on the trial that the gross rents derived from the land for ten years had averaged three hundred dollars per year. The cost of collecting them was twenty-five dollars per year, leaving a net sum of two hundred and seventy-five dollars which the land produced each year. Of that the plaintiff was entitled to one-fifth, or to a total for the five years during which the land was rented in the lifetime of Feghtly of two hundred and twenty-five dollars. His share of the cost of the improvements was about one hundred and sixty dollars, and of the taxes paid by Feghtly, or by the tax sale purchaser during Feghtly's lifetime, thirty-five dollars and twenty-three cents. It thus appears that the plaintiff's share of the rent during Feghtly's lifetime exceeded by a small sum the amount of his share of the taxes paid and improvements made during that time. As the defendant does not claim anything for improvements made at any other time, the district court rightly refused to allow her anything for improvements, or for taxes paid before Feghtly's death. The defendant is liable to the plaintiff for one-fifth of the rents she has received, which was one-half of the rent for the time she and Sarah Sigman were tenants in common, and all of the rent since that time, and also for interest. She is not liable for rents which may have been due to the plaintiff from Feghtly or from Sarah Sigman. She is entitled to deduct from the amount due from her on account of rent one-fifth of the amount of taxes she has paid on the land. The plaintiff is entitled to a partition as ordered by the district court. We have not overlooked the rule announced in *Austin v. Barrett*, 44 Iowa, 488, on which the plaintiff relies. But it

appears that in that case one Wilson owned as tenant in common an undivided one-tenth of the land there in controversy; that, instead of paying the taxes due, he permitted the land to go to tax sale, and became its purchaser, and then sold his interest to Barrett; that Barrett obtained a deed under the tax sale, and then claimed title to the entire tract of land adverse to his co-tenants; that, after he obtained the tax deed, his co-tenants offered to pay him for what he had paid out for taxes, and for all other expenses he had incurred on the land, and produced the money for that purpose, but he refused the tender, on the ground that he had a good title to the land. It was held, that his acts made him a disseisor of his co-tenants, and for that reason, and because of his attempt to destroy their title, he was not entitled to contribution for improvements made. But we have seen that Feghtly was not a disseizor. He did not obtain a tax deed, and the only interest the defendant is shown to have had in the one issued subsequently to his death is that, after this action was commenced, she received a conveyance of the land from the grantee of the person to whom the tax deed was issued. The conveyance thus ·obtained did not transfer any interest in the land, nor did it embarrass the plaintiff, and the only evidence that the defendant claimed adversely to the plaintiff, is her answer in this case. We do not think the tax deed should have any effect in the determination of this case. The decree of the district court will be modified to conform to the conclusions we have announced, and the cause will be remanded to that court, to ascertain the amount due to the plaintiff, under the rules we have stated, for a final adjustment of the rights of the parties, and for a decree in harmony with this opinion.— MODIFIED AND AFFIRMED.