SILAS H. SPARKS *et al.* v. ADOLPH FRIEDRICH
HEINRICH BODENSICK *et al.*

No. 14,246.    (82 Pac. 463.)

SYLLABUS BY THE COURT.

1. DESCENTS AND DISTRIBUTIONS — *Real Estate* — *Alien Heirs.*
   The provision of the original section 17 of the bill of rights
   of the state constitution, that "no distinction shall ever be
   made between citizens and aliens in reference to the pur-
   chase, enjoyment or descent of property," made the statute
   of descents and distributions apply to aliens as well as to
   citizens, and enabled the former to inherit real estate in
   Kansas.

2. TITLE AND OWNERSHIP—*Adverse Possession.* Where one en-
   tered upon land of an intestate under a deed from persons
   who in fact had no title but who were described therein as
   all of the intestate's heirs, and afterward purchased the in-
   terest of a part of the true heirs under circumstances tend-
   ing to show a recognition of their ownership, the fact that
   he then made unsuccessful efforts by advertisement in news-
   papers and otherwise to ascertain whether there were any
   other heirs is a circumstance from which a trial court is
   justified in finding that the possession of such occupant was
   not at that time adverse to the heirs who had not conveyed
   their interest to him, notwithstanding he was in complete
   control of the property, paying the taxes, making improve-
   ments and collecting the income without accounting to any
   one.

3. ———— *Case Followed.* The second paragraph of the sylla-
   bus in *Russell v. Hallett,* 23 Kan. 276, approved and followed.

Error from Cowley district court; CARROLL L.
SWARTS, judge.    Opinion filed October 7, 1905.    Af-
firmed.

*Hackney & Lafferty,* for plaintiffs in error.

*Grant Stafford, G. H. Buckman,* and *Charles W.
Roberts,* guardian *ad litem,* for defendants in error.

The opinion of the court was delivered by

MASON, J.: This is a controversy over the title to a
tract of land that was owned by C. A. Spradau at the
time of his death.    Spradau was never married, and

had no children. Both his parents died in his lifetime. He died intestate in 1873. The sole heirs of his mother living at the time of his death were her brothers, George Shaffer and Jacob K. Shaffer. The property therefore descended one-half to the Shaffers and one-half to the heirs of Spradau's father, unless the matter is affected by the fact that while the mother and her heirs were American citizens the father and all his heirs were aliens.

In 1878 Silas H. Sparks obtained a quitclaim deed to the property from several persons who were described in the instrument as the sole heirs of C. A. Spradau, but who in fact were not his heirs and had no interest in the land. Sparks, however, took possession under the deed and remained in the occupancy of the property until this suit was begun, in 1898, except that in 1887 he was forcibly dispossessed by one B. W. Matlack, whom he ousted by action brought for that purpose within a few months. In 1887 Sparks bought the title that had been inherited by Jacob Shaffer, and between that time and 1900 he also acquired by purchase the title that had descended to George Shaffer, so that he had then succeeded to all the rights of the heirs of Spradau's mother. In 1898 the heirs of Spradau's father (or their successors in interest) brought a suit for partition against Sparks, claiming the ownership of a half-interest in the land. They recovered a judgment sustaining that claim, from which Sparks now prosecutes error. The judgment must be affirmed unless it shall be held either (1) that, by reason of the alienage of Spradau's father and his heirs, the entire title has passed through the heirs of his mother to Sparks, or (2) that Sparks has acquired title against the foreign claimants by adverse possession for fifteen years.

It is contended by plaintiff in error that at the time of Spradau's death the rule of the common law that aliens cannot inherit real estate was in force in Kansas, and that therefore the entire title to the property

passed to his only American kinsmen—his mother's brothers. To this contention we cannot agree. Section 17 of the bill of rights of the state constitution as it then stood provided that "no distinction shall ever be made between citizens and aliens in reference to the purchase, enjoyment or descent of property." This provision was self-executing. Under its terms the statutes determining the course of descent of the property of intestates of necessity defined the rights of aliens as well as of citizens, and upon Spradau's death the foreign relatives—the father's heirs—became the owners of a half-interest in the land.

A provision of a treaty negotiated in 1827 between the United States and the Hanseatic republic, of Bremen, of which Spradau's father and his heirs were citizens, is invoked as having a bearing on the matter. This provision is substantially that, in case the laws of either country prevent citizens of the other from entering into the possession of inherited real estate on account of their alienage, a period of three years shall be granted in which to dispose of it, but as no such disability was imposed by the law of Kansas when Spradau died there is nothing in the circumstances of the present case to which it can apply.

The amendment to the section of the constitution above quoted, adopted in 1888, which permitted regulation of the rights of aliens to inherit and hold property, and the statute passed in pursuance of it restricting such rights (chapter 3, Laws of 1891, repealed by chapter 1, Laws of 1901), cannot affect the case, for the title had vested in the foreign heirs in 1873 and could not be devested by subsequent changes in the law. No attempt was made by the state to enforce against the defendants in error the requirement of the statute of 1891 that alien landowners should dispose of their real estate within three years, and the plaintiff in error can take no benefit from it. (*Investment Co. v. Trust Co.*, 65 Kan. 50, 68 Pac. 1089.)

It remains to determine whether Sparks held pos-

session of the property adversely to the foreign heirs for a period of fifteen years. The physical interruption in his possession by the intrusion of a stranger, to which reference has already been made, was probably not enough to break its continuity in legal contemplation, for it appears that a legal remedy was invoked against it within a reasonable time and was prosecuted to a successful determination. (1 Cyc. 1012.) The vital question is whether, in view of the fact that the plaintiffs were cotenants of Sparks, his possession was hostile to them. It is familiar law that as between cotenants the character of occupancy necessary to constitute adverse possession is very different from that obtaining in the case of strangers.

"The entry and possession of one tenant in common is deemed the entry and possession of all the cotenants, and does not amount to a disseizin. Such possession, therefore, can never be adverse until there is an actual ouster of the cotenants, or some act deemed by law equivalent thereto." (1 A. & E. Encycl. of L. 801.)

"Mere possession of a tenant in common, no matter how full and complete, does not of itself prove an ouster of his cotenant. There must be something to show a denial or repudiation of his cotenant's rights, or the possession will be deemed to be held in subordination thereto." (*Squires v. Clark,* 17 Kan. 84.)

In *Elder v. M'Claskey,* 17 C. C. A. 251, 261, 70 Fed. 529, 538, it was said that the rule expressed in the paragraphs just quoted "has no application to any case except where the possession of the person in question was avowedly begun as a tenant in common, or under a deed which defined his title as such." This statement probably restricts the rule too closely, for it has been held to apply where one of several heirs enters into the possession of land upon the death of the ancestor without any acknowledgment of cotenancy. (*Phillipson v. Flynn,* 83 Tex. 580, 19 S. W. 136.) Where, however, one takes possession of land under a deed, the terms of the instrument may be very

important as indicating the character of the claim asserted. A multitude of cases hold that "where one of several tenants in common executes a deed purporting to convey the entire premises to one who enters into possession thereunder claiming title, or recording his conveyance, this will constitute a disseizin of the cotenants." (1 Cyc. 1078.) In *De Leon v. McMurray,* 5 Tex. Civ. App. 280, 23 S. W. 1038, a possession taken under a deed that described the grantors as the sole heirs of the original owners was determined to be adverse to all other heirs upon the principle that the terms of the deed afforded express notice of a claim of exclusive ownership.

The reasoning of these authorities probably compels the conclusion that Sparks's original occupancy of the land was *prima facie* adverse to all the world, inasmuch as he took possession under a deed purporting to convey the interest of all the heirs of Spradau, and that in fifteen years the statute of limitations made his title unassailable by any one, provided his conduct for that period continued to be entirely consistent with a claim of exclusive right. But the contents of the deed under which possession is taken is only one of the matters to be taken into account in determining its character. Whether it is to be deemed adverse in any particular case must be decided in view of all the attendant circumstances, and wherever the element of cotenancy is present the question is necessarily affected by the consideration that one of several tenants in common may exercise complete control of the property without thereby asserting exclusive ownership. (See the very full discussion and collection of decisions, to which citations have already been made, in 1 Cyc. 1071 to 1081; also notes to *Boyd v. Boyd,* 68 Am. St. Rep. 174, *Bader v. Dyer,* 68 Am. St. Rep. 338, *Soper v. Lawrence Bros. Co.,* 99 Am. St. Rep. 409, and *Baker v. Oakwood,* 10 L. R. A. 388, 389.)

Granting that the terms of the deed under which Sparks took possession indicated a claim to an ex-

clusive ownership by virtue of its designating the grantors as the sole heirs of Spradau, this consideration would not control if his attitude was afterward that of a cotenant recognizing the interests of other tenants in common. *(Van Ormer v. Harley,* 102 Iowa, 150, 71 N. W. 241; 1 Cyc. 1079; *Price et al. v. Hall,* 140 Ind. 314, 39 N. E. 941, 49 Am. St. Rep. 196.) It is true that he retained all the rents and profits of the property without accounting to any one, paid taxes, and made improvements, and these facts tend in some degree to support the theory of an exclusive and adverse possession. But his purchase of the interest of the American heirs, so far as it may be considered as a recognition of their rights, has an opposite tendency. In *Squires v. Clark,* 17 Kan. 84, the purchase of the interest of his cotenants by one in possession is spoken of as constituting the plainest possible recognition of their rights. In *Elder v. M'Claskey,* 17 C. C. A. 251, however, the purchase of an outstanding real or pretended title is treated as the mere buying of peace, implying no acknowledgment of its validity. These expressions are not necessarily conflicting, for, as pointed out in the discussion in the case last cited, the effect of the acceptance of a deed to an outstanding interest by one in possession under a claim of ownership must be interpreted according to the surrounding circumstances.

In the present case it is important to note that in the deeds taken from a part of the heirs in 1888, which were otherwise quitclaims, there was inserted a covenant that the grantors were in fact heirs of Spradau. Sparks could only be deemed to be asserting a complete title to the land in virtue of the recital of the earlier deed that its makers were the sole heirs. There is much force in the contention that, in accepting the subsequent deeds with a covenant (not a mere recital) of the heirship of the grantors, he abandoned that assertion. The circumstances under which he then acquired the title of the remainder of the Ameri-

can heirs tend even more strongly in the same direction. These heirs had executed to a stranger a deed which was claimed to have been fraudulently obtained. Sparks entered into a contract with them that he was to carry through litigation which they had begun to annul such conveyance on account of the fraud, and was then to obtain their title for the sum of $800; and this agreement was carried out by a decree of court for its specific performance, rendered in a suit brought by Sparks in which he alleged that they were owners of the land. It is hardly conceivable that this arrangement could have been planned and consummated in this manner while Sparks was claiming exclusive title in himself.

There may be grounds for contending, however, that the recognition by Sparks of the claims of the American heirs ought not to affect the character of his possession as against the foreign claimants, inasmuch as their title was unlike that of the native heirs, although derived from the same source, in that it depended upon the construction to be placed upon the law of alien inheritance. A further item of evidence becomes of great importance in this connection. Sparks testified, in the course of an examination in which the circumstances of his possession and his knowledge of the condition of the title were gone into at length, that some time after 1887, having heard it reported that there were some German heirs, he employed a Mr. Diffenbaugh to investigate the matter, and inserted a notice in German papers to ascertain whether there were any. He stated that no heirs were reported, but his institution of the inquiry seems wholly inconsistent with a contemporary claim of the complete ownership of the property. He asserted no title except through the heirs of Spradau. Every deed he had came from such heirs and implied a recognition that whoever was an heir of Spradau was a part owner of the land. If there were any German heirs, they were necessarily his cotenants. To admit their existence was to ad-

mit their ownership, and he can hardly be thought to have been denying their existence and at the same time prosecuting a search for them. Without undertaking to say that this evidence compelled the conclusion that Sparks's possession was not at that time adverse to the foreign claimants, we are of the opinion that, taken in connection with the other circumstances of the case, it at least afforded such support for a finding to that effect that a reviewing court cannot say that such finding was not justified.

A further question has also been presented by plaintiffs in error. It is urged that because Spradau's mother survived his father her heirs became entitled to the entire property. The statute reads:

"If one of his parents be dead, the whole of the estate shall go to the surviving parent; and if both parents be dead, it shall be disposed of in the same manner as if they, *or either of them,* had outlived the intestate and died in the possession and ownership of the portion thus falling to their share, *or to either of them,* and so on through ascending ancestors and their issue." (Gen. Stat. 1901, § 2522.)

The argument is that the words italicized must be interpreted to mean that in the circumstances stated the whole of the property shall go to the heirs of that one of the parents who survives the other. Expressions used in *Finley et al. v. Abner,* 4 Ind. Ter. 386, 69 S. W. 911, support this view. But in *Russell v. Hallett,* 23 Kan. 276, it was decided, although without discussion of the meaning of the words referred to, that the property in such a case descends one-half to the heirs of each parent. The section of the statute quoted was adopted literally from that of Iowa. The supreme court of that state, in *Bassil v. Loffer,* 38 Iowa, 451, has said of the words "or either of them":

"There is no greater foundation or warrant for applying these words to the parent last dying before the death of the intestate than to the one first dying. When both of the parents are dead before the decease of the intestate casting the descent, it is impossible

to apply these words to one to the exclusion of the other, for they apply equally to both."

It may be difficult to assign any real force to these words, but we are satisfied with the interpretation placed upon the section in which they occur by this court and by that of Iowa. The judgment is affirmed.

All the Justices concurring.