## ELBRIDGE BATTEL *vs.* ROBERT A. SMITH.

Deeds of "two and one quarter acres undivided in lot 17;" "three and a quarter acres more or less in number 17," part of "twenty acres and sixty rods in common pasture, lying in common with other proprietors;" and "two and a half acres of land" in the southeast division of common pasture "in lot number 17, and is undivided;" each convey an estate in common in lot number 17.

ACTION OF TORT for breaking and entering the plaintiff's close in Newburyport, which was formerly part of lot No. 17 in the first division of the remainder of the fourth general pasture reserved to the freeholders and payers of rates in the town of Newbury; and tearing down his fence.

At the trial in the court of common pleas in Essex at December term 1858, the plaintiff introduced certain deeds from the proprietors of said pasture, (which that court held invalid,) and proved his possession under them.

To show his interest in lot 17, the defendant introduced three deeds, one from Offin Boardman to himself, dated May 5th 1856, of "a certain parcel of lots of land in Newburyport aforesaid, in the southeast division of common pasture, namely, two and one quarter acres undivided in lot seventeen in the first division;" and two other similar lots; "it being all my interest in said pasture." Another from Rebecca B. Pearson, guardian of the children of Amos Pearson, to John and David Smith, dated April 22d 1857, conveying all the right, title and interest of which Amos Pearson died possessed in "a certain parcel of land situated in Newburyport, part in common pasture lying in common with other proprietors, containing twenty eight acres and sixty rods, and bounded as follows, to wit," in several parcels, one of which was "one lot containing three and a quarter acres more or less in number 17." And a deed from Anne W. Noyes to Albert Currier, dated May 12th 1857, of "a lot of land in the southeast division of common pasture in Newburyport aforesaid, being lot numbered fourteen," &c., "also two and a half acres of land in said pasture in lot number 17, and is undivided; the whole of said lot contains twenty acres and one hundred and forty rods, and is bounded" as the deed then set forth.

The defendant contended that under these deeds he and the other grantees named took an interest in lot number 17, as tenants in common; and offered evidence to prove that in tearing down the fence he acted not only in the exercise of his own rights as tenant in common, but also by the license and direction of said other grantees. But *Perkins*, J. ruled that these deeds gave the defendant no interest in the land described therein, so as to enable him to dispute the plaintiff's title or right in the premises. A verdict was returned for the plaintiff, and the defendant alleged exceptions.

*J. A. Gillis*, for the defendant, cited *Canning* v. *Pinkham*, 1 N. H. 357 ; 4 Cruise Dig. tit. 32, *c.* 21, § 44.

*S. B. Ives, Jr.* for the plaintiff, relied on *Phillips* v. *Tudor*, 10 Gray,   .

BIGELOW, J.   The trial of this case did not proceed far enough to lead to a comparison of the titles of the respective parties to the premises in controversy.   The plaintiff proved that he was in possession; this was a good title as against strangers, and would enable him to maintain trespass against the defendant, if he failed to show title in himself or in some one of those by whose authority he entered the premises.   But the defendant was not permitted to go into full proof of his title. He was cut off by the ruling of the court, that the deeds under which he justified the alleged trespass conveyed no title to the grantees.   The plaintiff recovered solely on his possessory title. We have no occasion therefore now to decide whether the ruling of the court as to the validity of deeds under which the plaintiff claimed to hold the premises was correct or not.

But we think it clear that the court erred in ruling that the deeds offered by the defendant would not give him an interest in common in the land described therein.   The deed from Boardman to Smith conveyed " two and one quarter acres undivided in lot seventeen; " the deed from Pearson to John M. and David Smith conveyed " three and a quarter acres more or less in number seventeen," part of twenty eight acres and sixty rods, described as being " in common pasture lying in common with other proprietors; " the deed from Noyes to Currier granted two and a half acres in the common pasture "in lot number seventeen and is undivided."   By these deeds we think it clear that the grantors intended to convey an undivided interest in the whole of lot number seventeen, in the proportion which the number of acres specified and granted by the deed bears to the whole quantity of land contained in that lot.   The use of the word " undivided " and the phrase " lying in common " show that the interest conveyed was undivided and in common, and not an estate in severalty; and the quantity of land granted is ascertained and fixed with certainty by the grant of a designated aliquot part of the whole land owned in common.   *Jewett* v. *Foster, ante,* 497.                                   *Exceptions sustained.*