Schoonover v. Tyner.

RODERICK SCHOONOVER v. EDGAR A. TYNER *et al.*

No. 14,378.     (84 Pac. 124.)

SYLLABUS BY THE COURT.

1. TITLE AND OWNERSHIP—*Adverse Possession by a Tenant in Common.* The law presumes the possession of a tenant in common to be the possession of all cotenants, and before such possession can become adverse there must be an actual ouster of all cotenants.

2. ——— *Inconsistent Positions Toward Cotenants by One in Possession.* A tenant in common in possession cannot occupy the opposing positions of recognizing and purchasing the interests of some of his cotenants, and at the same time claim that he has ousted the other cotenants.

3. ——— *Condition Precedent — Ouster — Adverse Possession.* Before a tenant in common can rely on an ouster of his cotenants he must claim the entire title to the land in himself, and must hold the exclusive and adverse possession against every other person.

Error from Elk district court; GRANVILLE P. AIK-
MAN, judge.    Opinion filed December 9, 1905.    Re-
versed.

## STATEMENT.

THIS was an action in ejectment for the recovery of
the undivided one-sixth interest in the southwest quar-
ter of section 28, township 28 south, range 13 east, in
the county of Elk. Judgment having been rendered
against the plaintiff, he prosecutes this proceeding.

The substantial facts upon which the rights of the
parties must be determined are as follow:  George W.
Knox was a widower and the father of six children—
George W., jr., Sarah, Columbus, Margaret, Emaline,
and Jesse M.   Clarissa Schoonover was a widow and
the mother of three children—Roderick, Louis, and
Frances.   George W. Knox and Clarissa Schoonover
were married, and Joanna Knox was the issue of this
marriage.   George W. Knox at his death, on January
1, 1873, was the owner of the land in controversy.
The heirs of George W. Knox were his widow, the six
children by a former wife, and Joanna.   His widow,
Clarissa, died December 8, 1873.   The heirs of Clar-
issa Knox were her three children by a former hus-
band, and Joanna Knox.

Some time after the death of Clarissa Knox, James
M. Spurgeon and his wife, Sarah Spurgeon, *nee* Knox,
went into possession of the land, and in 1875 Spurgeon
commenced to buy the interests of the different heirs.
On October 11, 1875, he purchased from G. W. Knox,
jr., and his wife all of their interests; on November
27, 1875, he purchased from Louis Schoonover, one of
the heirs of Clarissa Schoonover and a brother to the
plaintiff, his interest; on January 4, 1876, he pur-
chased the interests of Columbus Knox and his wife;
and on December 4, 1876, he purchased the interests
of Margaret Tyler, *nee* Knox, and her husband.

James M. Spurgeon died in 1877, leaving his widow,
Sarah Spurgeon, and three children—John, Charles,

and Joseph.. Subsequently the widow married D. D. Knight.

On December 1, 1879, Joseph Martin purchased the interest of Emaline Knox; on May 22, 1880, that of Sarah J. Knight, *nee* Knox, the widow of James M. Spurgeon; on August 4, 1887, the interest of Joanna Knox in the estate of George W. Knox, but not her interest in the estate of her mother, Clarissa Knox, deceased; and on December 10, 1888, the interests of Jesse M. Knox and his wife. None of these deeds purported to convey anything but the interests of the grantors in the estate of George W. Knox. In 1880 Joseph Martin went into possession of the entire tract of land, and continued in such possession until April, 1894.

In 1894 Joseph Martin and the Spurgeon heirs divided the land between themselves, Martin taking the west 118 acres and the Spurgeon heirs the east 42 acres. Joseph Martin and his family continued to occupy the west 118 acres until his death, in 1898. Martin left a widow and seven children. A few years later the widow died. On the 22d of January, 1901, the Martin heirs conveyed by warranty deed the west 118 acres to the defendant Edgar A. Tyner, and the Spurgeon heirs conveyed the east 42 acres to him. Tyner went into immediate possession, and still continues therein.

Soon after the marriage of his mother to Knox the plaintiff left the county and did not return, and was not heard from until a short time prior to the commencement of this action, a period of about thirty years, during which time he made no claim to any interest in the land.

The contention of the defendants, the Knox, Spurgeon and Martin heirs, and the Tyners, is that they and those through whom they hold had been in the open, notorious, exclusive and adverse possession, claiming the title of the entire estate, for more than fifteen years before the commencement of this action;

that, therefore, the plaintiff's right to recover, if he ever had any, is barred by the statute of limitations. This is the sole question in this case.

*George W. Day*, and *A. T. Ayres*, for plaintiff in error.

*T. J. Hudson*, for defendants in error.

The opinion of the court was delivered by

GREENE, J.: It is not denied that when George W. Knox died an undivided one-half of this land immediately descended to his children and the other undivided one-half to his widow. These heirs then became tenants in common of the land. At the death of the widow her undivided one-half descended to her heirs, who were Roderick (the plaintiff), Louis C. and Frances Schoonover, and Joanna Knox, each succeeding to an undivided one-fourth of the widow's portion and becoming tenants in common with the heirs of George W. Knox of the entire estate.

It is elementary that the possession of one of several tenants in common is the possession of all, and where a tenant in common, either in or out of possession, transfers his interest in the estate to a stranger the grantee becomes a tenant in common with all the others. (17 A. & E. Encycl. of L. 662, 663; *Gibbs, Administrator, v. Smith, Executor*, 66 Mass. 393; *Battel v. Smith*, 80 Mass. 497; *Gratz v. Land & River Imp. Co.*, 82 Fed. 381, 27 C. C. A. 305, 40 L. R. A. 393; *Wallace v. Miller*, 52 Cal. 655.) Joseph Martin, by his purchases of the interests of some of the heirs, became a tenant in common with them; and his entry into the possession of the land thereunder was that of a tenant in common, and his possession as such continued until some act was done which the law would recognize as an ouster or dispossession of his cotenants.

There is a great distinction between the rule applicable to the starting of the statute of limitations in an action of ejectment where the defendant went into

Schoonover v. Tyner.

wrongful possession and where the possession was rightful, such as the possession of a tenant in common for himself and his cotenants. (*Sparks v. Bodensick, ante,* p. 5.) This distinction appears not to have been very clearly observed in the trial of this cause. As to the former the statute begins to run in favor of the occupant immediately upon his taking the open, notorious and exclusive possession. Such possession is of itself adverse, and, being open and notorious, is notice to every person. Therefore a right of action in favor of the owner of the title accrues at once, and this starts the statute of limitations.

The claim of title of a tenant in common in possession which is necessary to put in operation the statute of limitations against cotenants out of possession must be actual, exclusive, and wholly within the claimant's own right. The possession must also be exclusive and adverse to all tenants in common, and in this state this condition must continue for a period of fifteen years before the statute of limitations becomes a bar to an action of ejectment by a cotenant out of possession.

In *Warfield et al. v. Lindell et al.,* 38 Mo. 561, 581, 90 Am. Dec. 443, the court, in speaking of the acts necessary to constitute an ouster by a tenant in common in possession, said:

"For this purpose there must be outward acts of exclusive ownership of an unequivocal character, overt and notorious, and of such a nature as by their own import to impart information and give notice to the cotenants that an adverse possession and an actual disseizin are intended to be asserted against them."

This rule was adopted in *Squires v. Clark,* 17 Kan. 84, where this court quoted approvingly the following from *Warfield v. Lindell,* 30 Mo. 272:

"A possession of land by a tenant in common for twenty-six years, and an exclusive receipt by him of the rents and profits, without any account rendered, or any demand made, would not of themselves raise a legal presumption of ouster by such tenant in common of his cotenants." (Page 87.)

In *Ingalls v. Newhall,* 139 Mass. 268, 272, 30 N. E. 96, we find the rule stated thus:

" 'It is the general rule of law,' says Mr. Justice Morton, 'that the possession of one tenant in common, though exclusive, being consistent with the right of his cotenant, does not amount to a disseizin of the co-tenant, and that an ouster, or some act which the law deems equivalent to an ouster, is necessary to consti-tute a disseizin of his cotenant by a tenant in com-mon.' "

The evidence necessary to establish an ouster by a tenant in common must be positive, clear, and un-equivocal.  Having gone into possession of the land as a tenant in common, the law presumes that the char-acter of his possession does not change and has refer-ence to the title under which he entered.  Therefore, before it can be held that a tenant in common in pos-session has committed the wrong of ousting his co-tenant, the acts which constitute the ouster, and the intent on the part of the tenant in common in posses-sion to oust his cotenant, must be clearly and satis-factorily shown.  The acts of Joseph Martin with ref-erence to his possession and ownership of the land in question, as shown by the record and enumerated in the statement of facts, conclusively show that he never claimed the entire estate, and that he never was in ad-verse possession of the entire tract.  After he went into possession as a tenant in common he purchased from time to time, until December, 1888, the interests of others of his cotenants; and in 1894, still recogniz-ing the interests of his cotenants—the Spurgeon heirs —he divided the land with them.  These acts alone are a complete refutation of the claim now made that Mar-tin was holding adversely and claiming to own the en-tire title to this property.  Such acts are a continual recognition of the outstanding interests of his coten-ants, and cannot be reconciled with a claim of ex-clusive ownership and adverse possession.

If the continued possession by Martin of the portion

of land set apart to him under the division in 1894 can be said to have been exclusive and adverse, it is the first time in the history of this case that he was holding any part of the land exclusively for himself and under a claim of adverse possession.   It is not, however, necessary to decide this question.   Conceding that the·possession by Martin of the west 118 acres, after the division, was exclusive and adverse, and amounted to an ouster of the other cotenants, it only dated from 1894, and therefore was not of sufficient duration to bar the present action.   It follows, therefore, that the statute of limitations had not barred the plaintiff's right of recovery.

The judgment is reversed and the cause remanded.

All the Justices concurring.