CARRIE NELSON, *Appellant,* v. ANDREW E. OBERG, *Appellee.*

No. 17,460.

SYLLABUS BY THE COURT.

1. HOMESTEAD ENTRY—*Death of Entryman—Widow Entitled to Patent.* About 1876 O. settled on an eighty-acre tract of land in Allen county. He died in 1879, having made one or more payments at the rate of $1.25 an acre, leaving a widow and two children, the plaintiff, of age and married and living on the adjoining eighty, and the defendant, a son then sixteen years old. The widow completed the payments and a patent was issued about 1882 in the name of the entryman. The widow and the son continued to live upon and improve the land, and in 1891 she conveyed it to him by deed, reserving to herself a life estate, and placed the deed of record. Thereafter the land was assessed to the son. The son resided on the land for some years, and at all times, whether living there or elsewhere, claimed to be owner subject to the mother's life estate. The mother stated at different times that the land was to be his after her death and it was so understood and reputed in the neighborhood. She received rent from the son and others who worked the land. The mother died in 1909, and in 1910 the plaintiff sued to set aside the deed for fraud and to partition the land. The entry is termed by the plaintiff a preëmption and by the defendant a homestead, and both claim under the provisions of section 2291 of the Revised Statutes of the United States and both plead the statute of limitations. *Held,* that under section 2291 the widow on completing the entry after the death of her husband became entitled to a patent and the absolute ownership of the land.

2. COTENANTS — *Adverse Possession — Deed — Claim of Owner-ship.* Assuming that the entry was in fact made under the act of Congress of August 11, 1876 (19 U. S. Stat. at Large, p. 127) providing for settlement upon and purchase of Osage ceded land at $1.25 per acre, and assuming, without deciding, that upon completion of the payments by the widow the patent should have issued to the heirs, then the deed in question amounted to a solemn declaration on the part of the widow that the son owned the land subject to her life estate therein, and with the payment of the consideration and acceptance of the deed by the son amounted to a denial on the part of both that the plaintiff had any interest whatever in the land.

3. ⸺ *Deed — Ouster — Limitation of Actions.* Assuming, without deciding, that upon the completion of the title the land rightfully belonged to the widow and the two children in common, then upon the execution and recording of the deed, and actual knowledge soon thereafter acquired, a cause of action accrued to the daughter for possession and partition, but she having allowed more than fifteen years to elapse before asserting her claim, the effect of the deed and the conduct of the mother and son being a denial of the plaintiff's cotenancy or rights as such, amounted to an ouster and the action is barred.

4. PUBLIC LANDS—*Patent in Name of Deceased Entryman— Rights of Widow.* Assuming, as the parties claim, that the rights involved are to be determined according to the provisions of section 2291 of the Revised Statutes of the United States, then as such provisions entitled the widow to a patent, the fact that it was issued in the name of the entryman does not, in view of the circumstances and acquiescence shown, preclude her from being the full beneficiary owner.

5. EVIDENCE—*Witness—Wife Competent in Behalf of Husband.* Section 320 of the civil code refers to parties and not to others who are called upon to testify, and the testimony of the defendant's wife concerning communications had by her with the mother was not incompetent by reason of that section.

Appeal from Allen district court. Opinion filed November 9, 1912. Affirmed.

*F. J. Oyler,* and *C. J. Peterson,* both of Iola, for the appellant.

*H. A. Ewing, S. A. Gard,* and *G. R. Gard,* all of Iola, for the appellee.

The opinion of the court was delivered by

WEST, J.: Carrie Nelson brought this suit to set aside a certain deed and to partition the eighty acres of land in question between her brother, the defendant, and herself. She alleged that in 1879 her father died intestate leaving his widow and the parties as heirs; that he owned the land, and that the mother was permitted by the plaintiff to occupy it during her life, but that at all times the plaintiff claimed and owned an interest therein; that in 1891 the mother made a deed to the defendant, reserving a life estate, but that the deed was void for undue influence and fraud; that the mother never intended to part with her interest in the land until after her death; that the defendant never had possession, and had lived in Missouri much of the time and paid no attention to the land after securing the deed and having it recorded.

After the overruling of a demurrer the defendant answered alleging that the father settled on the land in 1876, making the necessary entries and the first payment; that he relinquished the west half to the sister and her husband, who acquired title thereto; that at that time the sister was of age and it was understood and agreed between her and her father that the east half should afterwards become the property of the defendant; that the father died intestate before having completed the entry and after having made only one payment; that after his death the widow and the defendant took possession, completed the entry, the money being furnished by the defendant, and procured a certificate, which was afterwards destroyed, it having been issued about 1882; that the mother and the son

made lasting improvements and held open and exclusive possession, claiming it as their own until 1891, when the deed was made for the consideration of $100 paid by the defendant to his mother. The statute of limitations was also pleaded. The court found for the defendant and the plaintiff appeals.

The testimony failed to establish fraud in respect to the deed, and no agreement on the part of the plaintiff to relinquish her interest was shown. The father entered the eighty acres in question about 1876. There is some contention that he had previously filed on a quarter section and relinquished the other half to the plaintiff and expressed a desire that the defendant should finally have the eighty in controversy, but this contention is not well supported. The proof shows that the entryman died in 1879 leaving a widow and the defendant, then about sixteen years old, and the plaintiff, then of age and married. After his death the widow completed the payments, and the patent was issued about 1882 in the name of the entryman. The widow and the son remained upon and improved the land, and in 1891 she deeded it to him, reserving to herself a life estate, the defendant paying her $100. The deed was promptly recorded, of which the plaintiff soon acquired actual knowledge. The son continued to live on the land, but in later years moved away, always claiming, however, to be the owner when the life estate should terminate. The widow died in 1909.

The plaintiff argues that upon the death of the father and the completion of the title by the widow the land belonged to the family, one-half to the mother and one-fourth to each of the children, and that the mother had no title to more than one-half and hence her deed conveyed nothing more, and that forty acres of the land belonged and belongs to the plaintiff and the defendant in common and is subject to partition. It is suggested

2—88 KAN.

that the land became community property but such property is a stranger to our laws.

The defendant insists that upon the death of the husband and the completion of the title by the widow the land became hers absolutely by virtue of section 2291 of the Revised Statutes of the United States; that if this be incorrect then the plaintiff's cause of action is barred by the statute of limitations. The section referred to provides that if the entryman be dead "his widow; or in case of her death, his heirs or devisee; or in case of a widow making such entry, her heirs or devisee, in case of her death" may prove certain things, and "he, she, or they, if at that time citizens of the United States, shall be entitled to a patent, as in other cases provided by law."

The plaintiff argues that it was a case of preëmption as shown by the testimony concerning payments and installments at the rate of $1.25 an acre. The defendant proceeds upon the theory that it was a homestead entry, and both parties base their rights upon the section of the homestead law already referred to. As a matter of fact the land was undoubtedly Osage ceded land entered under the act of congress of August 11, 1876 (19 U. S. Stat. at Large, p. 127). Very likely after the entryman made one or more payments upon the land he acquired an interest therein which would descend to his heirs. While the act in question makes no provision for the completion of the title in such case as this and none as to who may receive the patent, it does provide in section 7 (19 U. S. Stat. at Large, p. 129) that nothing in the act shall prevent the land from being taxed under the laws of the state from and after the time the first payment is made, and being taxable it may have been descendible. So far as the homestead provision relied on is concerned, if the rights of the parties are to be determined by section 2291 of the Revised Statutes of the United States there is no question that the widow had a right to a patent which

would give her an exclusive title. In *Chapman, Ex'r, v. Price,* 82 Kan. 446, 4 Pac. 907, it was said that it was the intention of the homestead law that an entry under it should be for the sole benefit of the person making it, "but if he died before the expiration of five years, then that all the rights he had acquired in the land entered, by virtue of his entry and possession, should pass to and belong to his widow, if living." (p. 449.) Similar language was used in *Newkirk v. Marshall,* 35 Kan. 77, 83, 10 Pac. 571.

In *McCune v. Essig,* 118 Fed. 273, it was held that "A patent issued to the widow of a homestead settler upon her making final proof, in accordance with the provision of the homestead law, conveys the land to her absolutely, and no interest therein passes by inheritance to the children of her husband." (Headnote, ¶ 2.) This was affirmed by the circuit court of appeals (*McCune v. Essig,* 122 Fed. 588), and reaffirmed by the supreme court (*McCune v. Essig,* 199 U. S. 382).

(To the same effect are *Crist v. Crosby et al.,* 11 Okla. 635, 69 Pac. 885; *Perry v. Ashby,* 5 Neb. 291; *Jarvis v. Hoffman,* 43 Cal. 314; and *Hayes v. Carroll,* 74 Minn. 134, 76 N. W. 1017.)

As both parties appear to base their rights on this section, this rule might well dispose of the case. The fact that the patent was improperly issued in the name of the husband could not render the widow a trustee for either of her children, and the fact that all parties have acquiesced in the situation as it is and no attempt has been made to correct the patent makes it proper to hold that as between the plaintiff and the defendant the real ownership must be deemed to have passed to the mother.

Assuming, however, that the tract was Osage ceded land and that upon the death of the entryman and the completion of the title by the widow the patent should have gone to the widow and children jointly, has the plaintiff, under all the circumstances, a right to maintain

this action for partition? The testimony shows that
the widow repeatedly spoke of the land as Andrew's
after her husband's death, that it was so regarded in
the neighborhood, and although the plaintiff lived on
the adjoining eighty and knew about the deed and its
having been recorded, she did not, until after the death
of the mother, take any steps to assert her right to
any portion of the land. Her theory is that she did
not desire to disturb her mother's possession while she
lived, but for more than fifteen years she knew that
the mother, by her deed, had asserted adverse owner-
ship of the entire eighty and had attempted to convey
the entire title to the son, leaving only a life estate for
herself. The land was taxed to the son, and the taxes
for all these years have been paid, and the improve-
ments, whatever they are, have been made, all without
any expense to the plaintiff. The deed was a solemn
declaration on the part of the mother that she claimed
to own the land and intended to vest the full title, save
the life estate, in the son. Its record was notice to the
world, and if the title to one-half only was in the
mother and the other half in the daughter and the son
jointly, then upon the execution and recording of the
deed and actual knowledge thereof a cause of action
accrued to the plaintiff, and the continued occupation
by the mother and the son was accompanied by a con-
tinued denial of the plaintiff's interest and was there-
fore adverse to her. The deed was a declaration and
notice that both mother and son were holding ad-
versely to the daughter and that each was claiming that
the latter had no interest in the land, and yet more than
fifteen years elapsed before any legal steps were taken
to assert any claim of the plaintiff. Surely this is
not the case of one tenant in common holding posses-
sion without denial of his cotenant's title, but the very
opposite. It was testified that before her death the
mother had expressed a desire to sell the land for
three thousand dollars so that she and each of the

children could have a thousand dollars, and that she executed a gas lease, but these matters are insufficient to overturn the deed even if repeated statements by her that the land belonged to Andrew had not been shown.

It was held in *Squires v. Clark,* 17 Kan. 84, that mere possession of a tenant in common does not prove an ouster, but "there must be something to show a denial or repudiation of his cotenant's rights, or the possession will be deemed to be held in subordination thereto." (Syl. ¶ 2.)   In *Scantlin v. Allison,* 32 Kan. 376, 4 Pac. 618, a purchaser of the entire estate from the owners of four-fifths thereof took entire possession, appropriated all the rents and profits for several years, twice mortgaged the land and made alterations and improvements without consulting the owner of the remaining one-fifth, and he was held to have thereby ousted his cotenant.

"A multitude of cases hold that 'where one of several tenants in common executes a deed purporting to convey the entire premises to one who enters into possession thereunder claiming title, or recording his conveyance, this will constitute a disseizin of the cotenants.' (1 Cyc. 1078.)" (*Sparks v. Bodensick,* 72 Kan. 5, 9, 82 Pac. 463.)

In *Schoonover v. Tyner,* 72 Kan. 475, 84 Pac. 124, it was held that before a tenant in common can rely on an ouster of his cotenants he must claim the entire title and hold exclusively and adversely against every other person.   *Warfield et als. v. Lindell et als.,* 38 Mo. 561, was cited, to the effect that there must be "outward acts of exclusive ownership of an unequivocal character, overt and notorious, and of such a nature as by their own import to impart information and give notice to the cotenants that an adverse possession and an actual disseizin are intended to be asserted against them." (p. 581.)   If the mother and the son had verbally notified or joined in a letter to the plaintiff that

they claimed to own the entire eightly and that they denied that she had any interest therein, it would seem that this would amount to an unequivocal ouster, and yet it would not be as solemn and formal a declaration as a deed executed and recorded and brought to her actual notice, asserting full title and right to possession of the entire tract.

"In order to constitute a disseizin of a cotenant the fact of adverse holding must be brought home to him either by information to that effect, given by the tenant in common asserting the adverse right, or there must be outward acts of exclusive ownership of such a nature as to give notice to the cotenant that an adverse possession and disseizin are intended to be asserted. Actual verbal or written notice is not, however, necessary; adverse possession may be inferred from outward acts, open and notorious claim of ownership, and exercise of exclusive right. It has also been held that it is not absolutely essential that the co-owner should have actual knowledge; a tenant in common will be deemed to have notice of the adverse holding by his cotenant where the hostile character of the possession is so open and manifest that a man of reasonable diligence would discover it. . . . An assertion of an exclusive title to the whole of the land by a joint owner, and a contracting to sell the whole, are evidence of an adverse possession and such an ouster as to enable the cotenant to maintain ejectment." (1 Cyc. 1073, 1077.)

Complaint is made that the defendant's wife was permitted to testify to certain communications had by her with the mother in violation of section 320 of the civil code. Whether or not the wife was a competent witness for her husband she was not a party to the suit and therefore was not disqualified by reason of the section referred to.

The judgment is affirmed.