(83 South. 117)

WINSETT et al. v. WINSETT. (8 Div. 164.)

(Supreme Court of Alabama. June 12, 1919. On Rehearing, Oct. 23, 1919.)

1. LIMITATION OF ACTIONS ⬥➡70(2) — DISABILITY OF JOINT TENANT; RIGHTS OF OTHER JOINT TENANTS SAVED.

Complainant in suit for partition by sale being a minor recently attaining majority, if he may recover his moiety of the property, the rights of the other joint tenants are saved from the operation of the statute of limitations or of the rule of repose by the infancy of the minor complainant.

2. TENANCY IN COMMON ⬥➡15(2) — NO CHANGE OF TENANCY WITHOUT NOTICE TO OTHER COTENANTS.

Being in possession, a cotenant cannot change his tenancy without notice to the other cotenants, as a cotenant out of possession may rely on the possession of one of his cotenants as being for all until an actual ouster is shown.

3. TENANCY IN COMMON ⬥➡14 — DISSEISIN; TAKING BY ONE TENANT OF RENTS AND PROFITS.

The mere fact that a cotenant in possession has taken all the rents and profits does not show ouster of his companions.

4. TENANCY IN COMMON ⬥➡30—REDEMPTION FROM MORTGAGES AND TAX SALES BY COTENANT.

A redemption of the lands from mortgages and tax sales by one cotenant, or a purchase before the time for redemption has expired, and the discharge of other liens, will inure to the benefit of all cotenants.

5. TENANCY IN COMMON ⬥➡13 — DEFEAT OF RIGHTS OF COTENANTS BY FORECLOSURE.

If a cotenancy is destroyed by foreclosure and expiration of the time for redemption, or by a sale for taxes and expiration of the time within which to redeem, or by a long-continued adverse and hostile possession of a tenant denying the title of his cotenants and the knowledge of the hostile claim actually known to his cotenants, the rights of such cotenants are defeated, and a subsequently acquired title and possession of the land by a former cotenant will be in his individual capacity.

6. TENANCY IN COMMON ⬥➡9 — FAILURE TO CONTRIBUTE TO REDEMPTION OR REPURCHASE.

Failure of cotenants to contribute as agreed to the price for redeeming or repurchasing the land did not of itself destroy the cotenancy.

7. TENANCY IN COMMON ⬥➡15(10) — EVIDENCE NOT SHOWING TERMINATION AND OUSTER.

In suit for partition between cotenants, evidence held insufficient to show a termination of cotenancy and ouster of cotenants by one of them, or that a claim of exclusive and hostile ownership by such one was brought home to the others by actual knowledge, not by mere constructive notice, in such a way as to terminate the tenancy.

8. TAXATION ⬥➡734(1) — TAX SALES VOID WITHOUT SHOWING OF JURISDICTIONAL FACTS.

Tax sales are void unless it affirmatively appears from the record that jurisdictional facts exist to give the court right and power to order sale of the specific lands.

9. PARTITION ⬥➡87 — REIMBURSEMENT OF COTENANT FOR EXPENDITURES.

A cotenant in suit for partition being treated as trustee of the title for the benefit of the several cotenants, on final reference will be allowed due reimbursement out of the use, occupation, etc., of the property for his lawful expenditures in protecting it against the lien

---

⬥➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of taxes and for valuable improvements made in good faith.

10. TENANCY IN COMMON ⬦30 — REDEMPTION OR REACQUIREMENT BY SINGLE TENANT INURES TO ALL.

Redemption or reacquirement by one cotenant of land which had belonged to all, before they were barred by statute, inured to the benefit of all the cotenants, regardless of the subsequent intent of the redeeming or reacquiring cotenant.

11. TAXATION ⬦734(4)—SALE VOID FOR INSUFFICIENCY OF DESCRIPTION.

A tax sale of land described as "240 acres in Madison X Roads Beat" was a nullity.

12. LIMITATION OF ACTIONS ⬦72(3)—RIGHTS OF INFANT COTENANT.

The claim, or title, or possession of a purchaser at tax sale of lands of cotenants, and that of a single cotenant, were not conclusive of another infant cotenant's right to sue for the land until the expiration of the three years allowed by Code 1907, § 4846, after the infant cotenant had attained his majority.

13. PARTITION ⬦83—JURISDICTION TO GIVE COMPLETE RELIEF.

A court of equity, having jurisdiction of the subject-matter and of the parties for the primary purpose of a sale for distribution among joint tenants, will retain and exercise such jurisdiction to give complete relief to a cotenant who has another interest in the land.

14. DESCENT AND DISTRIBUTION ⬦52(3) — RIGHT OF SURVIVING HUSBAND.

Where decedent left a husband and infant daughter, the infant dying before decedent's sister, the husband took no further interest on the death of decedent's sister, the sister's one-sixth undivided interest in land descending by statute to her brothers and sisters, or their descendants; her brothers and sisters taking as next of kin of the aunt.

15. EXECUTORS AND ADMINISTRATORS ⬦439 —PERSONAL REPRESENTATIVE OR ADMINISTRATOR AD LITEM A NECESSARY PARTY IN PARTITION.

In suit for partition by a cotenant, the personal representative of the estate of a deceased cotenant should have been made a party, or an administrator ad litem should have been appointed by the court, as provided by Code 1907, § 2818, in the absence of proof corresponding with the allegations of the bill that there were no debts of the estate of decedent, and that she died intestate, allegations which should have been proved to enable the court to ascertain whether her lands descended to and vested in certain nephews and nieces freed from the necessity and burden of formal administration in a court having jurisdiction.

16. APPEAL AND ERROR ⬦187(3)—NOTICE OF ABSENCE OF MATERIAL PARTY BY SUPREME COURT.

The absence from the cause of a material party is such defect as the Supreme Court will take notice of ex mero motu.

17. TENANCY IN COMMON ⬦15(10)—RECOGNITION OF RIGHTS OF OTHERS BY COTENANT HOLDING ADVERSELY.

A reasonable and actual presumption is that when a tenant in common in possession recognizes a cotenant's right in or title to the land he ceases to be an adverse holder, no matter how hostile his previous possession has been; the recognition of the existence of cotenancy as to another one of the cotenants having effect to put them all in possession of their shares.

Appeal from Circuit Court, Madison County; Robert C. Brickell, Judge.

Bill for partition by Mack Winsett against A. G. Winsett, and others. From the decree respondents appeal. Reversed, and cause remanded.

David A. Grayson and Alice B. Baldridge, both of Huntsville, for appellants.

R. E. Smith and Lanier & Pride, all of Huntsville, for appellee.

THOMAS, J. The bill is for partition by a sale of land that cannot be equitably divided among joint owners without a sale. As last amended, Mack Winsett was complainant, and all the other next of kin of Abraham G. Winsett, deceased, were made respondents. The said Abraham G., who died in 1882, was the father of respondent Ashley Glen Winsett, John A. Winsett, Susan Clift, deceased, Mary A. Durden, Wm. J. Winsett, and James T. Winsett, deceased, and the grandfather of complainant Mack Winsett.

The said James T. Winsett died intestate in 1894, leaving as his sole heirs at law Tennessee Stevenson (wife of Wm. Stevenson), Abe Winsett, James L. Winsett, Elmo Winsett, Ella Durham, Maggie May, Sallie Carlisle, Ida Husch, and Mack Winsett. Tennessee Stevenson died intestate, leaving her husband and an infant, who died before the suit was brought. Susan Clift died intestate without debts, and without husband or children, after filing her answer in this suit. Respondent Charles E. Johnson was the owner of an unpaid mortgage given on the lands by Ashley G. Winsett. The complainant and respondents are alleged to be joint owners of the land involved, and it is agreed that, in the event the court holds that such joint ownership existed between the parties, said lands cannot be equitably divided without a sale. The lands were in range —— west.

[1] Mack Winsett, the youngest of said parties was born on May 29, 1892. After attaining his majority, the bill was filed by him on June 5, 1915. Respondent's counsel correctly observed that if complainant, Mack Winsett, could not recover against the respondent, none of the other parties to the bill could recover. Being a minor recently attaining majority, if he may recover his moiety of

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

said real property, the rights of the other joint tenants are saved from the operation of the statute of limitations or of the rule of repose by the infancy of this minor complainant. Gourdine v. Theus, 1 Brev. (S. C.) 326.

If the respondent, though claiming to be in adverse possession of the land, had recognized the joint interest of one of the cotenants, did it operate to the benefit of other joint tenants? Of this we may observe that the legal effect of such recognition in other jurisdictions has been that where a tenant in common in adverse possession of land recognizes his cotenants' right in the same, a presumption arises that he ceases to be an adverse holder thereof. That is to say, "This recognition has the effect to put all the tenants in common in seisin and possession of their respective shares." Sparks v. Bodensick, 72 Kan. 5, 10, 82 Pac. 463; Venable v. Beauchamp, 3 Dana (Ky.) 321, 28 Am. Dec. 74; Alsobrook v. Eggleston, 69 Miss. 833, 13 South. 850; Illg v. Garcia, 92 Tex. 251, 47 S. W. 717; House v. Williams, 16 Tex. Civ. App. 122, 40 S. W. 414. He cannot recognize or purchase the interests of some of his cotenants and at the same time claim that he has ousted the other cotenants. Schoonover v. Tyner, 72 Kan. 475, 84 Pac. 124.

[2-5] It may further be noted of the rules of cotenancy obtaining in this jurisdiction, applicable to the instant case, that, being in possession, a cotenant cannot change his tenancy without notice to the other cotenants (Alexander v. Wheeler, 69 Ala. 332, 340; Parks v. Barnett, 104 Ala. 438, 443, 16 South. 136; Ashford v. Ashford, 136 Ala. 631, 34 South. 10, 96 Am. St. Rep. 82; Walker v. Wyman, 157 Ala. 478, 47 South. 1011); for a cotenant out of possession may rest on the possession of a cotenant as being for all cotenants until an actual ouster is shown. The mere fact that a cotenant in possession has taken all the rents and profits does not show ouster of his companions. Coleman v. Coleman, 173 Ala. 282, 55 South. 827; Williams v. Avery, 38 Ala. 115, 118; Fielder v. Childs, 73 Ala. 567; Kidd v. Borum, 181 Ala. 144, 61 South. 100, Ann. Cas. 1915C, 1226; McGuire v. Van Pelt, 55 Ala. 344. A redemption of the lands from mortgages and tax sales, or a purchase before the time for redemption has expired, and the discharge of other liens, will inure to the benefit of all cotenants therein. Bailey's Adm'r v. Campbell, 82 Ala. 342, 2 South. 646; Jackson v. King, 82 Ala. 432, 435, 3 South. 232; Howze v. Dew, 90 Ala. 178, 184, 7 South. 239, 24 Am. St. Rep. 783; Courtner v. Etheredge, 149 Ala. 78, 43 South. 368; Jones v. Matkin, 118 Ala. 341, 24 South. 242. However, if the cotenancy is destroyed, as by foreclosure and the expiration of the time for redemption, or by a sale for taxes and expiration of the time within which to redeem, or by a long-continued adverse and hostile possession of a tenant denying the title of his cotenant, and the knowledge of this hostile claim actually known to his cotenants, the rights of such cotenants are defeated. Coleman v. Coleman, supra; Johnson v. Toulmin, 18 Ala. 50, 52 Am. Dec. 212; Smith v. Duvall, 78 South. 803;[1] Chavers v. Mayo, 79 South. 594.[2] The thereafter acquired title and possession of the land by a former cotenant will be in his individual capacity and not for the former joint owners.

[6] Respondent Ashley Glen Winsett discussed the redemption of these lands with other of his cotenants; participated with one of them in freeing it of a trespasser who was felling the timber and claiming the right to cut the same therefrom; shared with his cotenant the timber cut by such third party, and moved on the land with the assistance of such other or another cotenant; conveyed a portion thereof to his sister; requested a cotenant to join with him in a mortgage thereon; and recognized the title of other cotenants by requesting a quitclaim deed in 1913. Inquiry of counsel as to the proposed contribution of the necessary money by cotenants for its repurchase or redemption was as follows: "Did any refuse to put up their part, or fail to put up their part?" Witness replied: "They all failed." This failure alone did not destroy the cotenancy. Its existence and continuance were established by the other acts adverted to, notwithstanding the witness' statement that he purchased the land from a Mr. Forbes, thereafter selling a portion to his sister, Mrs. Clift; that two of the many parties in interest knew of his purchase and of the sale, for he admits that he never notified them or any of the other cotenants that he was holding the land as owner and not "for their benefit"; "never told any of them that they had no interest" in the land.

[7] That this respondent fails to fix this knowledge as to complainant's ancestor and as to many others of said parties in interest is shown by the following:

"Q. Before the death of your brother James T. Winsett, had you and he discussed the matter of trying to get possession of these lands or redeeming them; if so, state the conversation? A. We had a conversation about all going in and redeeming the land, before he was taken sick and died. Q. Did he know then that somebody else was in possession of the land? A. Yes; I suppose he did. * * * Q. The Winsetts had talked over the matter of that land about that time? A. Yes. Q. With the possibility of getting it? A. Yes. Q. James T. Winsett paid the taxes on that land, didn't he? A. My mother gave him money two or three times to pay the taxes, but I don't know whether or not he paid them. Q. Was that the first two or three years after he moved off the land? A. Yes. * * * Q. When you and Jim (meaning James T. Winsett) and Clift and John were talking about the advisability of redeeming and trying to get possession of this land, had you

[1] 201 Ala. 425.    [2] 202 Ala. 128.

been advised that the lands had been sold, or that you had lost the lands in any way? A. Yes. Q. Was anything said at that time about each of you putting up your part? A. Yes. Q. Did any refuse to put up their part, or fail to put up their part? A. They all failed."

Thus was the existence of the cotenancy recognized and shown. It is far short of a termination of cotenancy and ouster of cotenants. Moreover, this evidence does not show that said Ashley Glen Winsett informed his associates that he had cleared, or, as for that, would clear, the lands of well-founded claims, and gave his associates in title within a reasonable time an opportunity to avail themselves of the benefits of his redemption or purchase of such conflicting claim or interest in the common property. Savage v. Bradley, 149 Ala. 169, 43 South. 20, 123 Am. St. Rep. 30.

The testimony of the other parties shows that they were the next of kin of the said Abraham G. Winsett; that they or some of them knew and understood that the land in question was the property of said parties; that they or the complainant had no knowledge of declarations or acts on the part of said respondent hostile to their interest or in denial of their cotenancy in the land. When all the evidence is considered it fails to show an efficacious repudiation of their rights as cotenants, or that a claim of exclusive and hostile ownership made by respondent was brought home to them by actual knowledge, not by mere constructive notice in such wise as to terminate the tenancy. Palmer v. Sims, 176 Ala. 59, 61, 57 South. 704; Kidd v. Borum, supra (181 Ala. 160, 61 South. 100, Ann. Cas. 1915C, 1226); Oliver v. Williams, 163 Ala. 376, 383, 50 South. 937; Ashford v. Ashford, supra; Lay v. Fuller, 178 Ala. 375, 379, 59 South. 609; Johns v. Johns, 93 Ala. 239, 243; 9 South. 419. So, also, the evidence fails to show that Mrs. Clift's purchase and possession of the 120 acres were known to the cotenant complainant, Mack Winsett or to his ancestor.

[8] Tax sales are void unless it affirmatively appears from the record that jurisdictional facts exist to give the court the right and power to order the sale of the specific lands. Gunter v. Townsend, 79 South. 644, 650, 651;[3] Lodge v. Wilkerson, 174 Ala. 133, 135, 56 South. 994; Wartensleben v. Haithcock, 80 Ala. 565, 1 South. 38. The alleged tax sale in 1884 and that in 1901 are not shown to have been of such statutory compliance as to terminate the cotenancy. The reciprocal rights of tenants in common thereafter existed, and the trust was fixed on the lands for the equal benefit of all at the time the bill was filed by said Mack Winsett. Johns v. Johns, supra; Coleman v. Coleman, supra.

[9] When respondent Ashley Glen Winsett is treated as a trustee of the title for the benefit of the several cotenants, on final reference he will be allowed due reimbursement out of the use, occupation, etc., of the property for his lawful expenditures in protecting it against the lien of taxes (Johns v. Johns, supra, 93 Ala. 243, 9 South. 419; Hale v. Kinnaird, 76 South. 954, 958[4]), and for valuable improvements made thereon in good faith. Porter v. Henderson, 82 South. 668;[5] Sanders v. Robertson, 57 Ala. 465, 472; McDaniel v. L. & N. R. R. Co., 155 Ala. 553, 46 South. 981; Ford v. Borders, 200 Ala. 70, 75 South. 398.

[10] We come last to consider whether the suit of Mack Winsett for himself and his cotenants was seasonably brought. Mrs. Winsett, the widow, continued to occupy the lands for two years after her husband's death (1882), when she removed therefrom and delivered the possession to her tenants in 1884. Subsequently and to her death (1893) the evidence fails to show who was in the possession other than that her children discussed among themselves their title thereto and came to Madison county for its investigation. After the death of Mrs. Winsett and that of her son James T. Winsett, the father of complainant, said children continued the discussion of their interest in the property until 1896, when other of these heirs went to Huntsville to investigate its status. In 1891 or 1892 respondent Ashley Glen Winsett went to Huntsville upon a like mission, and, he says, was informed that the heirs of said Abraham G. were barred by the statute, and that the lands had been acquired by Felix Forbes. A short time thereafter the respondent and his brother, John A. Winsett, went upon the land, found a man in possession, dispossessed such third party, exercised acts of joint ownership over the lands, sold the timber felled thereon by said third party, and the said Ashley Glen Winsett moved thereto with the assistance of said John A. Winsett. Said John A. testified that when he learned that $240 was demanded by Forbes for the redemption of the land he refused or failed to proceed further to that end. Respondent Ashley Glen Winsett testified that "he bought the lands from Forbes," and paid a reasonable sum therefor. When the whole evidence is considered, it is shown that the original purpose of said respondent was to reacquire, or redeem, the land if such was necessary. Such redemption or reacquirement inured to the benefit of all the heirs at law of said Abraham G. Winsett, regardless of the subsequent intent of said Ashley Glen Winsett.

[11, 12] The contention of respondent that he purchased the land from Forbes, and that the latter had title thereto from a tax sale of the land made in 1884, is unavailing. The land attempted to be sold at said time as that of Abraham G. Winsett was described as "240 acres in Madison X Roads Beat." Such

3 202 Ala. 160.                4 200 Ala. 596.        5 Ante, p. 312.

sale was a nullity. Gunter v. Townsend, supra; Lodge v. Wilkerson, supra. Had such sale been made pursuant to statute, the evidence fails to connect Forbes' title with said purported tax title. The most the evidence conclusively shows is that Forbes assessed and paid the tax on the lands described as these (except as being in range —— east) in the year 1897, and for the subsequent years of 1898, 1899, and 1901. This tendency of evidence was to show that Forbes' claim of title did not begin with the attempted tax sale in 1884, but with the year 1897. Thus is said respondent concluded by the fact that Forbes' title dated from the year 1897, when he began to assess the same for taxes, and not from 1884, as is insisted in argument. The evidence failing to show that said Ashley Glen Winsett or his alleged predecessor in title had acquired title prior to 1897 as against complainant's right of action, the statute of limitations did not begin to run until this latter date. Forbes' claim or title or possession and that of said respondent were not conclusive of complainant's right to sue for the recovery of the land, until the expiration of the three years allowed by statute after Mack Winsett had attained his majority, on May 29, 1913, within which time he filed this bill for himself and cotenants (June 5, 1915), within that statutory period. Code 1907, § 4846; Veitch v. Woodward Iron Co., 76 South. 124, 127;[6] Dallas Compress Co. v. Smith, 190 Ala. 423, 67 South. 289; Stockdale v. Cooper, 193 Ala. 258, 69 South. 110; Chavers v. Mayo, 79 South. 594;[7] Dinkins v. Latham, 202 Ala. 101, 79 South. 493, 498.

[13] Appellant, respondent, urges that complainant cannot recover in this suit for his interest in the land as next of kin of Susan Clift, deceased. This is error; complainant must have had title or a present interest in the lands when the bill was filed that suspended the running of the statute. Gunter v. Townsend, supra. We have shown that he had such interest in the land. A court of equity, having assumed jurisdiction of the subject-matter and of the parties, for the primary purpose of a sale for distribution among joint tenants will retain and exercise that jurisdiction to the giving of complete relief. Hicks v. Meadows, 193 Ala. 246, 69 South. 432.

[14] The sister of Susan Clift, Tennessee Stevenson, died, leaving the husband (W. M. Stevenson) and infant daughter. This infant daughter died before the said Susan; therefore W. M. Stevenson took no other or further interest in the land on the death of said Clift. Such one-sixth undivided interest descended by statute to her brothers and sisters, or their descendants, as was the case. The trial court decreed that W. M. Stevenson had and took an interest in said one-sixth Clift interest in the land. This was reversible error; for the several brothers and sisters or their descendants acquired said additional interest in the land (subject to administration) that was formerly owned and acquired from her father by the said Susan, not as the children or grandchildren of Abraham G. Winsett, deceased, but as the next of kin of Susan Clift. The decree of the circuit court is reversed and remanded for correction as to the amount of respective distributive shares of the several parties in interest.

[15, 16] Since the reversal of the cause is necessary, it may be noted that no personal representative of the estate of said deceased, Susan Clift, was made a party, nor was an administrator ad litem appointed by the court as provided by statute. Code 1907, § 2818; Wynn v. Hoffman, 82 South. 32;[8] Malone v. Hill, 68 Ala. 225. This should have been done in the absence of proof corresponding with the allegations of the bill to the effect that there were no debts of the estate of said Susan, and that she died intestate. Such allegations should have been proved to enable the court to ascertain whether the lands descended to and vested in said descendants, freed from the necessity and burden of formal administration in a court having jurisdiction. Clark v. Knox, 70 Ala. 607, 614, 45 Am. Rep. 93; Wynn v. Hoffman, supra; Moore v. Alexander, 81 Ala. 509, 511, 8 South. 199; Bell v. Hall, 76 Ala. 546, 550; Ex parte Lunsford, 117 Ala. 221, 226, 23 South. 528. The absence from the cause of a material party is such defect as this court will ex mero motu take notice of. Goodman v. Benham, 16 Ala. 625; Prout v. Hoge, 57 Ala. 28; Dooley v. Villalonga, 61 Ala. 129. If there were debts of the estate of Susan Clift, it is not clear that when the bill was filed the same were barred; if not, the personal estate of the deceased may be affected by such debts, as well as by a judgment against her in this cause, and her personal estate should be represented in the litigation. Cook v. Atkins, 173 Ala. 363, 371, 56 South. 224.

In the recent case of Porter v. Henderson, where partition was sought by a sale of real property for division in chancery among the joint owners, the right of a joint owner for an accounting for valuable improvements made by him in the bona fide belief that he was the owner of the land, and not with the intent and purpose of embarrassing cotenants, incumbering the estate or hindering partition, was declared.

[17] We may close the discussion by saying that the conclusion reached in this case is in line with the recent decision in Copeland v. Martin, 78 South. 378,[9] where it was held that the rule of prescription did not bar complainant in a suit for sale of land and division of proceeds, when, before the completion of such period, complainant asserted her claim to an heir's interest in the land

[6] 200 Ala. 358.   [7] 202 Ala. 128.   [8] Ante, p. 72.   [9] 201 Ala. 472.

which had been recently recognized by the defendants. In the instant case, the fact remains that the respondent Ashley Glen Winsett recognized his two uncles' interest in the land from time to time (and possibly that of his aunt Susan) in the manner we have indicated. His recognition of their right by his request for the quitclaim deed was as late as within three years before the filing of complainant's bill for partition. It is a reasonable and natural presumption that when a tenant in common, in possession, recognizes a cotenant's right in or title to the land, he then ceases to be an adverse holder, no matter how hostile his previous possession has been; that recognition of the existence of cotenancy as to any one of the cotenants had the effect to put all the tenants in common in possession of their respective shares. The reason for this rule is that one cannot occupy an inconsistent position in relation to his cotenants, such as recognizing the interest of some of them and claiming ouster as to others. Schoonover v. Tyner, supra. Complainant's suit was timely brought for himself and all the joint tenants.

The decree of the circuit court is reversed and the cause is remanded; and the costs of this appeal are equally apportioned to and taxed against Mack Winsett and his associates in title and parties to this suit on the one hand, and to and against Ashley Glen Winsett on the other.

Reversed and remanded.

ANDERSON, C, J., and MAYFIELD and SOMERVILLE, JJ., concur.

. On Rehearing.

THOMAS, J. The cost of the appeal is taxed against appellee; otherwise the application for rehearing is overruled.