No. 30,654.

LUISE WYSS SCHWAB et al., *Appellants*, v. CHARLES WILLIAM WYSS et al., *Appellees*.

(12 P. 2d 719.)

Opinion filed July 9, 1932.

*W. T. Roche,* of Clay Center, *G. Detjen* and *C. W. Detjen,* both of St. Louis, Mo., for the appellants.

*D. H. Myers,* of Wakefield, *W. M. Beal* and *Oscar E. Peterson,* both of Clay Center, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an action for the partition of real property. Plaintiffs joined with it a cause of action for accounting for rents and profits and another one in ejectment. In addition to the general denial the defenses were that plaintiffs were citizens and residents of Switzerland and as such could not inherit. Second, that there was adverse possession for more than fifteen years. The trial court made

findings of fact and conclusions of law. It ruled against defendants on the right of plaintiffs to inherit, and since defendants have filed no cross appeal the soundness of that ruling is not before us for consideration. The trial court ruled in favor of defendants on title by adverse possession and rendered judgment accordingly, from which the plaintiffs have appealed.

The facts briefly may be thus stated: John and Frederick Wyss, brothers, natives of Switzerland, came to Clay county, in this state, sometime prior to 1880. They later became naturalized citizens of the United States. John obtained title to a quarter section of land in Clay county by patent, which he filed for record in 1880. Frederick acquired land situated a few miles away. John never married, but he improved his land and farmed it, or had it farmed, until his death in April, 1907. He left no will. John and Frederick Wyss had two brothers and a sister who remained in Switzerland. Their heirs at law are plaintiffs in this action. A few days after John's death Frederick conferred with the probate judge of Clay county, who advised him in a letter that:

"If your sister and brothers were never citizens of this country you can be appointed administrator and go ahead settle up your brother's estate. You need not wait to those names, being aliens, they acquire any title to real estate, and from what you told me it will take all the personal estate to pay the debts. In that case you will be entitled to the real estate after the payment of the debts. You can be appointed at any time."

A few days later Frederick was appointed administrator of the estate of his brother John and filed an inventory showing the personal property of the estate and its appraised value. On the back of this inventory, in a blank prepared for that purpose, was listed the real property owned by John Wyss at the time of his death, including the quarter section of land sought to be partitioned in this action. After having debts paid and in closing the estate, Frederick Wyss wrote one of the plaintiffs in this action as follows:

"As you perhaps will know that my brother John, your uncle, died and left some property, without any will. The property was settled here in the probate court and after all claims were paid a balance of $380.09 was left to be divided among the heirs. I did send my sister in Leuzigen, Anna Maria, her part and requested her to send me the names and addresses of all other heirs, which I just received. . . . Yours and your late sister's part together is . . . in francs 242.50, for which you will find inclosed bank draft besides legal receipt for you to sign and to return at your earliest convenience. . . . I sent to all of them to-day, . . . which is the portion coming to them, . . ."

Plaintiffs had no actual knowledge that John Wyss was the owner

of real property at the time of his death, and did not learn of it until about 1928. Soon after the death of John Wyss, relying upon the letter of the probate judge to him, Frederick Wyss, in good faith believing that he was the owner of the real property in question, took possession thereof with the intention of claiming the same as his own, and until his death, in November, 1929, continually remained in the open, notorious and exclusive possession of the same, claiming to be the owner thereof. During this time he made lasting and valuable improvements, consisting chiefly in reshingling the house, patching the roof of the barn, plastering the house, repairing the fences, erecting a windmill, constructing a cement cave and digging a well, and he paid the taxes on it each year. When plaintiffs, about 1928 or early in 1929, learned that John Wyss had died possessed of real property they appear to have taken up the matter with Frederick Wyss by correspondence. On October 16, 1929, he wrote one of the plaintiffs, making an offer of settlement. Before anything of that kind was consummated, however, Frederick Wyss died. In July, 1930, this action was brought. Plaintiffs are the heirs at law of the two brothers and sister of John and Frederick Wyss who remained in Switzerland. The defendants are the heirs and devisees of Frederick Wyss and the executor of his will. The parties to the action, by stipulation, have agreed upon the relation of the parties as heirs at law to John Wyss. Under this stipulation the plaintiffs, collectively, are entitled to an undivided three-fourths interest in the real property sought to be partitioned, if they are entitled to anything. They are entitled to it unless Frederick Wyss acquired title as against them by adverse possession.

Passing now to the legal question presented. Assuming the alien brothers and sister of John Wyss could inherit from him—a question not before us for determination—upon his death title to the real property in question passed to his three brothers and one sister, an undivided one-fourth to each. (R. S. 22-120 and 22-128.) They became tenants in common. (38 Cyc. 7; Schoonover v. Tyner, 72 Kan. 475, 84 Pac. 124.) The erroneous advice of the probate judge to Frederick Wyss cannot change our statutes of descent. No question concerning the title to the real property was presented in the probate court, and the judge of that court should have given no advice concerning it.

It is well settled that each of the tenants in common to real property has an undivided interest and right of possession to each and

every part of it. (38 Cyc. 20.) Each and all of them are entitled to take possession of the property. When possession of the property is taken by one of them the presumption is that he takes possession under his right of title and his right to possession by reason of his title. His title and right to possession being in common with other cotenants, his possession is presumed to be in common with other cotenants and for their use and benefit as well as his own. As against third persons other than cotenants the simple fact that he has possession necessarily makes it adverse and hostile to them. But the simple fact that one of the cotenants has possession is not of itself adverse to other cotenants. Such possession becomes adverse to the other tenants only when the tenant in possession is claiming title and the right to possession to the exclusion of his cotenants when that matter is brought home to them. The rule is well stated in 7 R. C. L. 851, as follows:

"It is a general rule that an entry upon real property by a tenant in common claiming an adverse possession against his cotenants can never become the foundation of such a title until they first have had actual notice of the repudiation of their rights. If the rule were otherwise the tenant out of possession might be disseized and lose his remedy by the bar of the statute of limitations, without notice that the possession of his cotenant had become hostile. To avoid this injustice, the law deems possession to be amicable until the tenant out of possession has in some method been notified that it has become hostile. The intention of a cotenant in possession to hold the common property in severalty and exclusively as his own, with knowledge of or notice to his cotenants of such intention, constitutes the disseizin. The notice or knowledge required may be actual, as in the case of a disavowal or disclaimer of any right in his cotenants, or it may be inferred from acts or circumstances attending such adverse possession, which are overt, notorious and unequivocal in their character and import. From such acts it is the duty of the other cotenants to be informed thereof and to draw such reasonable inferences therefrom as prudent persons possessed of and interested in like information would naturally do, and such cotenants out of possession cannot prevent the operation of the statute of limitations by proving that they did not know of the facts affecting their interest, or, knowing of them, did not draw correct conclusions therefrom. However, it must be borne in mind that the knowledge of the hostile attitude of the possessor is not to be presumed, but must be shown by proof so as to preclude all doubt of the want of knowledge on the part of the owner. . ."

To the same effect is 38 Cyc. 25 to 34. Among other things it is said:

". . . possession by a tenant in common is not adverse as to his cotenants until they are so informed, either by express notice or by acts of such an open, notorious, and hostile character as to be notice in themselves. . . ." (p. 27.)

See, also, Freeman on Cotenancy and Partition, 2d ed., §§ 221 to 230.

Many cases are cited in support of these texts. Some of the later cases, holding in varied language the necessity of notice to cotenants not in actual possession of the adverse and hostile character of the possession claimed by the cotenant in possession, are: *Oliver v. Howie,* 170 Ark. 758, 281 S. W. 17, 21; *Hardin v. Tucker,* 176 Ark. 225, 3 S. W. 2d 11; *Morris v. Jackson,* 296 S. W. 486 (Tex. App.); *Wiggins v. Holmes,* 39 S. W. 2d 162, 164 (Tex. App.); *Weston v. Morgan,* (S. C.) 160 S. E. 436, 444; *Andrews v. Floyd,* 308 Ill. 559, 139 N. E. 883; *Walter v. Walter,* 117 Neb. 671, 222 N. W. 49, 55; *Wilcox v. Sams,* 213 Ky. 696, 281 S. W. 832; *Beaver v. Wilson,* 117 Okla. 68, 245 Pac. 34.

Our own cases are to the same effect: *Squires v. Clark,* 17 Kan. 84; *Scantlin v. Allison,* 32 Kan. 376, 4 Pac. 618; *King v. Hyatt,* 51 Kan. 504, 32 Pac. 1105; *Rand v. Huff,* 6 Kan. App. 922 (Memo. only), 51 Pac. 577; *Sparks v. Bodensick,* 72 Kan. 5, 82 Pac. 463; *Schoonover v. Tyner,* 72 Kan. 475, 84 Pac. 124; *Erskin v. Wood,* 77 Kan. 577, 580, 95 Pac. 413; *Nelson v. Oberg,* 88 Kan. 14, 127 Pac. 767; *Cribb v. Hudson,* 99 Kan. 65, 160 Pac. 1019; *Segelbohm v. Waldner,* 101 Kan. 156, 165 Pac. 649; *Finley v. Dubach,* 105 Kan. 664, 185 Pac. 886; *Lumber Co. v. Marshall,* 109 Kan. 172, 174, 197 Pac. 861; *Banner v. Welch,* 115 Kan. 868, 871, 225 Pac. 98.

In this connection it must be remembered:

"'Adverse possession is to be taken strictly, and every presumption is in favor of a possession in subordination to the rightful owner. Title by adverse possession, therefore, must be established by clear and positive proof. It cannot be made out by inference.' (1 R. C. L. 695.)" (Quoted approvingly in *Finn v. Alexander,* 102 Kan. 607, 610, 171 Pac. 602.)

This is particularly true when a tenant in common undertakes to claim title by adverse possession against his cotenants. All of his declarations and his acts will be construed against his claim if reasonably open to that construction.

Let us now apply these legal principles to the facts disclosed by the record. The general rule as stated in R. C. L., *supra,* is that the possession of one tenant in common cannot ripen into title by adverse possession against his cotenants "until they first have had actual notice of the repudiation of their rights." There is no contention that such actual notice existed in this case. The rule further is that notice to the other cotenants may be inferred from acts or

circumstances attending such adverse possession. In support of the judgment of the court below appellees contend that the facts here bring them within that portion of the rule. Obviously this means something more than mere possession by one of the tenants in common receiving rents and income, making repairs and paying taxes. If it meant nothing more than that it would mean nothing more than the possession by one who was not a cotenant. The rule necessarily means that under the circumstances of the particular case, including the situation of the parties and their means of knowledge of the possession of the claiming cotenant, his acts must be such that they are presumed to have known, not only of his possession of the premises, but that his possession was adverse as to them. The facts here do not present such a situation. Here the cotenants out of possession were nonresidents of the country. Frederick Wyss, whom appellees now contend was in possession adverse to them, was their only informer in this country of the property owned by John Wyss at his death and how such property was being handled or disposed of after his death. It is clear all the parties so understood that. The situation differs entirely from that in *Nelson v. Oberg,* supra, and *Segelbohm v. Waldner,* supra, where the cotenant out of possession had such business relations with the one in possession, or by his proximity and knowledge of the matter was bound to know that the one in possession was claiming title to the entire property. Perhaps the letters written by Frederick Wyss to plaintiffs at the time he was closing the estate, the material portion of one of which is above set out, were not intended to deceive them with respect to the real property owned by John Wyss at the time of his death, but they certainly were incomplete. They stated:

". . . my brother John . . . died and left some property without any will. The property was settled here in the probate court. . ."

After all claims were paid there was a balance of which the share of the addressee was a stated amount. This letter spoke of property, not simply personal property. Plaintiffs, receiving such letters, naturally understood that all of the property, real and personal, owned by John Wyss at the time of his death had been settled or administered in probate court. Appellees say that he was writing only as administrator, and hence that his letters necessarily referred to the property which was administered in the probate court, which, under our law, would be the personal property only, unless the real estate were necessary to pay debts. We note he did not sign this

letter as administrator, but signed it personally. Furthermore, if he had wished to advise them fully with respect to the property left by John Wyss he might very well have told them that he was reporting on the personal property only, that there was real property, that he had been informed by the probate judge they could not inherit the real estate because they were aliens, and that he would be entitled to all of the real property. Whatever may be the reason for it, the fact is that he gave them no information concerning the estate other than that property had been left which had been settled in the probate court. Plaintiffs were far away, knew nothing about the land, and were in no position to acquire any knowledge or information from the mere occupancy of it by Frederick Wyss.

Appellees stress the fact that John Wyss had obtained a patent for this land which he recorded in 1880. They quote our statute (R. S. 67-222), that such an instrument so recorded imparts notice to all parties of its contents. They also refer to the notice imparted by instruments filed in a court of record, as construed in *Black v. Black,* 64 Kan. 689, 68 Pac. 662; *In re Estate of McFarland,* 118 Kan. 534, 235 Pac. 832, and allied cases. They argue plaintiffs were bound by the notice given by these instruments. Such notice was constructive notice as distinct from actual notice. The most that can be said about that is that plaintiffs had constructive notice of the fact that in 1880 John Wyss acquired title from the government to the land in question, and from the notice on the back of the inventory filed in probate court that he was still the owner of the land at the time of his death. Those instruments could not advise plaintiffs that Frederick Wyss took possession of the land after the death of John Wyss. Much less could they advise that if he did take possession he did so under a claim of the ownership of the full title.

Among other things, the trial court found that the possession of Frederick Wyss was adverse and hostile. Under the evidence in this case that is true as to third parties other than his cotenants. As applied to plaintiffs, there is no evidence to support it.

Because plaintiffs were denied any relief, no accounting was had. That branch of the case should be tried out.

The result is that the judgment of the court below must be reversed, with directions to render judgment for plaintiffs for their respective interests in the property, which, under the stipulation, aggregate three-fourths, and to try the question of accounting. It is so ordered.